No. 92-204

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs.-

SHARON F. YOUNG,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Arthur J. Thompson, Thompson & Sessions, Billings,
Montana

      For Respondent:

      Hon. Joseph P. Mazurek, Attorney General, Cregg W.
Coughlin, Assistant, Helena, Montana; Dennis
Paxinos, Yellowstone County Attorney, Billings; Mark
J. Murphy, Assistant Attorney General, Special
Deputy County Attorney, Helena, Montana

Submitted on Briefs: July 8, 1993

Decided: July 20, 1993

**FILED**

JUL 2 0 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a jury verdict in the Thirteenth Judicial District convicting Defendant of conspiracy to commit felony theft by deception. We affirm.

We state the issues on appeal as follows:

1. Was there sufficient evidence to support the jury's guilty verdict?

2. Does collateral estoppel bar the State from prosecuting the Defendant for conspiracy to commit felony theft by deception?

The Defendant Sharon F. Young (Sharon) was charged with conspiracy to commit felony theft for obtaining workers' compensation benefits by deception. In January 1983, Sharon and her husband, co-defendant Robert Young, applied for workers' compensation insurance coverage through the State Fund Mutual Insurance Company (State Fund) for themselves as owners and employees of the West Parrot Creek Properties. The Youngs' application for coverage indicated that the nature of their business was raising fur animals, and claimed an estimated $42,000 annual earnings for the business. The coverage began March 1, 1983.

Thereafter, Robert Young filed a claim for benefits, claiming he had injured himself on March 30, 1983. He reported he was rebuilding a set of corrals when cross-ties fell on him. Sharon was listed as a witness to the accident and signed the claim form as employer. The claim form indicated that Robert Young was earning $400 per week, which amount would provide him with the

2

maximum amount of benefits allowable under law. Robert Young began receiving biweekly benefits after this alleged injury occurred.

Subsequently, on May 6, 1983, Sharon filed a claim for benefits, claiming that she had injured herself while lifting a bale of hay on May 4, 1983. Sharon also reported that she earned $400 per week. Sharon began receiving benefits on May 6, 1983. On that same day, Robert Young canceled their workers' compensation insurance.

In November 1983, Robert Young's doctor advised the State Fund that Robert's medical condition had stabilized. The State Fund notified Robert Young that his benefits would be terminated on December 28, 1983.

Thereafter, on December 21, 1983, Sharon and Robert Young again applied for workers' compensation insurance as partners in the West Parrot Creek Properties. The Youngs' application for coverage indicated that the nature of their business was raising beef and feed, and claimed $41,600 annual earnings for the business (or $400 per week per person). The insurance coverage was effective on December 21, 1983. Thereafter, Robert Young filed a new claim for benefits, stating he was injured on December 31, 1983, after inhaling the pesticide Furadan 44. Again, Sharon was listed as a witness to the accident and signed the claim form as employer. The claim form indicated that Robert Young was earning $425 per week.

From April 1983 to December 1988, the State Fund paid Robert Young total compensation payments in the amount of $72,426.71.

3

From May 1983 to July 1987, the State Fund paid Sharon compensation payments. On July 23, 1987, Sharon entered into a Full and Final Compromise Settlement with the State Fund. Sharon received total benefits in the amount of $116,148.14, plus an additional $21,650 for medical expenses.

An investigation into Sharon and Robert Young's 1983 claims was initiated after a failed attempt by Robert Young and co-defendants Edith and Jack Wilkerson to fraudulently obtain workers' compensation benefits in 1988. Subsequently, criminal charges were filed against Sharon and Robert Young and Edith and Jack Wilkerson.

Evidence presented at trial in support of the State's case against Sharon was as follows. At the time that the Youngs claimed annual earnings of $42,000 and $41,600, the West Parrot Creek Properties was an eighty-acre parcel of land near Roundup, Montana. In July 1983, a State Fund field examiner went to the Youngs' property and found no corrals, no livestock, and no farm equipment. The field examiner met with Robert Young again in February, 1984, regarding the pesticide claim. Robert Young was unable to produce the package of pesticide but claimed to have purchased it in Hardin. The field examiner was unable to locate any business in Hardin which sold any pesticide to Robert Young.

Other evidence presented by the State showed that no game or fur farm license was ever issued to either Sharon or Robert Young. There were no state tax records which showed that either Young paid any taxes on any equipment or machinery. The Montana Department of Livestock records indicated that between 1982 and 1989, the Youngs

4

owned or shipped only sixteen head of cattle. There was no other documentation of any fur animal or cattle business.

In 1986, Dr. William Shaw, a board-certified physician specializing in occupational medicine, examined the Youngs upon the State Fund's request. Dr. Shaw indicated that Robert Young had a long history of medical problems, but concluded that none of Robert Young's preexisting injuries were aggravated by any injuries in 1983. He also concluded that Robert Young's lung problems were not associated with the inhalation of pesticide, but were the result of smoking. Dr. Shaw reported that, during the examination, Robert Young made the following statements: "That subsidy that Workers' Comp is the best thing I've ever had," "All these injuries have caused me to be this way," and "Collecting Workers' Comp is better than stealing."

Dr. Shaw also examined Sharon, who also had a long history of medical problems. Sharon told Dr. Shaw that her May 4, 1983, injury occurred when she fell off the back of a pickup while feeding cattle. There were no cattle on the property in May, 1983, and Sharon's prior claim to the State Fund did not state that she fell from a pickup.

During Dr. Shaw's examination of Sharon, he saw no evidence that she had any problems sitting or moving, nor did she exhibit any signs of pain or discomfort. Dr. Shaw concluded that Sharon's medical problems predated the alleged injury of May, 1983.

This evidence was presented to a jury on August 19 and 20, 1992. The jury found Sharon guilty of conspiracy to commit felony

5

theft by deception. Sharon was sentenced to five years in prison, all suspended, and was ordered to make restitution. From that verdict and sentence, she appeals.

When the issue on appeal is whether there was sufficient evidence to support a jury verdict, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. McLain, (1991), 249 Mont. 242, 246, 815 P.2d 147, 150.

## I - SUFFICIENCY OF THE EVIDENCE

Sharon was convicted of conspiracy to commit felony theft by obtaining unauthorized control of State Fund monies through deception. Sharon contends that there was insufficient evidence to support her conviction because the State Fund "authorized" or "consented" to her actions by entering into a Full and Final Compromise Settlement of her workers' compensation claim. Viewing the evidence in the light most favorable to the prosecution, we hold that there is sufficient evidence to support the conviction.

The only issue raised by Sharon regarding the sufficiency of the evidence is whether or not she obtained the workers' compensation benefits by deception. Section 45-2-211, MCA, states that "the consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense." Sharon would use this statute as a complete defense, and thus a bar to this conviction.

We note that consent is ineffective if it is induced by

6

deception. Deception, as defined at § 45-2-101(17), MCA, means knowingly to:

(a) create or confirm in another an impression which is false and which the offender does not believe to be true;

(b) fail to correct a false impression which the offender previously has created or confirmed; . . .

There are a number of instances in this case where Sharon "deceived" the State Fund. For example, Sharon deceived the State Fund into issuing workers' compensation insurance on the West Parrot Creek Properties, when the same was not a legitimate, ongoing enterprise. She indicated that Robert Young and she both earned $400 per week, when she knew the same to be untrue. Sharon created or confirmed in the State Fund the impression that she had been injured while in the course and scope of her legitimate employment with the West Parrot Creek Properties. After the State Fund accepted liability for Sharon's purported injury, Sharon failed to correct the false impression that she created regarding her injury, the nature of her business, and the earnings of that business.

There is no question that the State Fund's consent to liability in this case was induced through Sharon's deception. The State Fund did not know Sharon's claim for benefits was fraudulent at the time it entered into the settlement agreement. Had the State Fund received accurate information from Sharon, they would not have extended over $135,000 in benefits to her. The State Fund did not consent to Sharon's actions in this case.

Sharon claims that the State Fund could have ascertained the

7

fraudulent nature of her claim if it had exercised due diligence. In essence, Sharon would have the State Fund conduct a "merits evaluation" of each and every claim filed with the State Fund before accepting liability and beginning benefits payments. We refuse to impose this burden on the State Fund. The State Fund should be able to rely on the truthfulness, completeness, and accuracy of the representations made by the claimant and employer. Willem Visser, a claims manager for the State Fund, estimated that the State Fund has approximately 20,000 claims per year. To force the State Fund to thoroughly investigate each claim on its merits before providing benefits would cause undue hardship on an already-burdened system. In addition, such a requirement would hurt claimants, in that it would unreasonably delay benefits payments and settlement of legitimate claims.

We hold that the State presented sufficient evidence to support the conviction in this case.

## II – COLLATERAL ESTOPPEL

Sharon contends that the doctrine of collateral estoppel bars the State from prosecuting her in this case. She argues that the State is precluded from prosecution by the State Fund's compromise settlement of the workers' compensation claim. We disagree, and hold that collateral estoppel does not apply in this case.

The doctrine of collateral estoppel is also known as "issue preclusion." It is similar to res judicata; however, res judicata "bars the same parties from relitigating the same cause of action while collateral estoppel bars the same parties from relitigating

8

issues which were decided with respect to a different cause of action." Boyd v. First Interstate Bank (1992), 253 Mont. 214, 218, 833 P.2d 149, 151. This Court has previously established a three-prong test to determine if the doctrine of collateral estoppel applies to a particular case. Boyd, 833 P.2d at 151.

1. The identical issue raised has been previously decided in a prior adjudication;

2. A final judgment on the merits was issued in the prior adjudication; and

3. The party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication.

Boyd, 833 P.2d at 151. The first prong, identity of issues, is the most crucial of the three elements. Anderson v. State (1991), 250 Mont. 18, 21, 817 P.2d 699, 702. In order to satisfy this element, the identical issue or "precise question" must have been litigated in the prior action. Anderson, 817 P.2d at 702.

Collateral estoppel does not apply in this case, because Sharon cannot establish the threshold first element. The Full and Final Compromise Settlement reached between the State Fund and Sharon on July 23, 1987, dealt solely with the amount of benefits thought to be owed to Sharon. Sharon's conspiracy to commit theft was not known at the time the compromise agreement was reached, and thus the fraud issue was not actually raised or litigated. Therefore, the issue in the workers' compensation case and the issue in this criminal prosecution are not identical.

9

A party who obtains workers' compensation benefits through trick and deception cannot assert the doctrine of collateral estoppel against the innocent victim. The State Fund is entitled to rely upon facts presented by the employer when applying for insurance coverage and by the employee when applying for benefits. If it is later discovered that the State Fund provided coverage or benefits because of fraud or deception, the State has the right to criminally prosecute those individuals to the fullest extent of the law.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

July 20, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Marvin L. Howe, Esq.
Simonton, Howe & Schneider, P.C.
P.O. Box 1250
Glendive, MT  59330

Gary L. Day, Esq.
Lucas & Monaghan, P.C.
P.O. Box 728
Miles City, MT  59301

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy