No. 97-327

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

WILBUR A. FADNESS, individually and as
successor in interest to MILDRED H. FADNESS,

Plaintiff and Appellant,

v.

DOROTHY CODY, ROGER J. WIMMER,
d/b/a ROOSEVELT COUNTY ABSTRACT,

Defendants and Respondents.

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable David J. Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Z. Kent Sullivan, Sullivan & Tabaracci, Missoula, Montana

For Respondents:

Ralph J. Patch, Attorney at Law, Wolf Point, Montana
(for Dorothy Cody)

Robert M. Knight; Knight, Masar & Poore; Missoula, Montana
(for Roger J. Wimmer, d/b/a Roosevelt County Abstract)

Submitted on Briefs: December 4, 1997

Decided: December 30, 1997
Filed:

------------------------------------------------

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Wilbur A. Fadness and Mildred H. Fadness appeal from the judgment of the Fifteenth Judicial District Court, Roosevelt County, granting summary judgment to Dorothy Cody and Roger Wimmer based on collateral estoppel and the Fadnesses' failure to set forth sufficient facts to establish liability.  We reverse.

The issue raised on appeal is whether the District Court erred when it granted summary judgment to Cody and Wimmer based on collateral estoppel and lack of sufficient facts to establish liability.

FACTUAL BACKGROUND

On January 30, 1989, the Fadnesses listed for sale 160 acres of land, located near Wolf Point,  Roosevelt County, Montana, with Dorothy Cody of Cody Real Estate in Wolf Point.  The terms of the property listing called for "$25,000.  Negotiable. 30% down--9% interest on Contract for Deed or Cash."

In June 1989, William Kuntz III contacted Cody Real Estate by mail and requested information on the property. Cody provided the information requested.  In August 1989,
Kuntz made an offer to buy the property which Cody communicated to Mrs. Fadness.  Cody prepared a buy-sell agreement which she forwarded to Kuntz in New York state.  Kuntz made substantial alterations to the agreement and returned it to Cody.  Cody drafted a second buy-sell agreement and once again sent it to Kuntz.  Kuntz altered this
second agreement and forwarded it directly to the Fadnesses.  The Fadnesses accepted this offer on September 26, 1989, and returned the buy-sell agreement to Cody.

Kuntz mailed Cody the earnest money and Cody ordered title insurance from Roger Wimmer at the Roosevelt County Abstract Office.  Cody then delivered the contract to Gerard Schuster, a Wolf Point attorney, and requested that he draft whatever
legal documents would be needed.  Schuster provided Cody with a promissory note, a mortgage agreement, a deed, and a realty transfer certificate.  Thereafter, Cody mailed
the original mortgage agreement and a photocopy of the promissory note to Kuntz, and the original deed to the Fadnesses.

Once the parties received the documents, Kuntz insisted that the Fadnesses agree to include Mrs. Kuntz as a grantee on the deed, but not as an obligor on the mortgage agreement.  Cody discussed Kuntz's demand with Mrs. Fadness and testified that she advised Mrs. Fadness against adding Mrs. Kuntz's name to the deed but not to the mortgage agreement.  Mrs. Fadness later contacted Cody and explained that she had spoken to Kuntz and that she and Mr. Fadness had decided that it would be fine to add Mrs. Kuntz to the deed.  Cody testified that she has no knowledge of whether the Fadnesses ever consulted an attorney regarding her advice not to allow Mrs. Kuntz to be
a grantee on the deed.

Thereafter, Kuntz returned the signed mortgage and promissory note to Wimmer, the closing agent.  Although Cody did not see these documents again, Wimmer contacted Cody when they arrived at his office.  On November 6, 1989, the Fadnesses signed the warranty deed and returned it to Cody.  Cody delivered the deed and the earnest money deposit from her trust account to Wimmer, at Roosevelt County Abstract, for closing.

The transaction closed on October 3, 1990, over nine months after Kuntz first

demanded that his wife's name be added to the deed.  The deed, recorded on November 4, 1990, contains the added name of Mrs. Kuntz.  According to Mr. Kuntz, his wife's name was added sometime while the deed was in escrow. The mortgage agreement, signed on September 28, 1990, by Mr. Kuntz, references a note in the amount of $19,500 with the rate of interest on the outstanding balance lined through.  Mr. Kuntz admitted lining though that provision.  The promissory note, referenced in the mortgage and sent to Mr. Kuntz, has never been located and its whereabouts remain unknown.

Cody testified that she was aware that Kuntz made several changes to both buy-sell agreements.  She explained that, although she did not do so in this case,  it is normally her custom to have all changes on buy-sell  agreements initialed.  Cody explained that she did not understand the effect of having Mrs. Kuntz's name on the deed but not on the mortgage.  She also testified that she did not suggest to the Fadnesses that they discuss, with an attorney, the impact of structuring the transaction in this manner.  Cody received a fee for acting as the listing agent for the transaction.

Wimmer was the closing agent in this transaction and has been in the title insurance business for nearly twenty years.  In a deposition, Wimmer explained that a closing agent owes a fiduciary duty to the parties involved in a real property transaction. He stated that he saw that the interest section of the mortgage had been lined out and that it and all other modifications had not been initialed.  Like Cody, Wimmer explained that it is his custom and practice at closing to have all modifications initialed.  According to Wimmer, the lined out interest rate, without being initialed, renders the mortgage questionable for title examination purposes.

Wimmer further testified that he was aware of the significance of adding Mrs. Kuntz's name to the deed but not the mortgage agreement, and that any difference between the names on these documents was very important to the Fadnesses' position in this real property transaction.  Finally, Wimmer stated that he did not know whether the Fadnesses were aware of the addition of Mrs. Kuntz's name to the deed, and that he did not warn them of the consequences of having the transaction structured in this manner.

On April 13, 1992, Kuntz defaulted on his payments and the Fadnesses sued to foreclose the purchase money mortgage and quiet title to the real property. Pursuant to õ 71-1-232, MCA, the Fadnesses were precluded from recovering a deficiency judgment related to the debt secured by the mortgage.  The jury returned a verdict for the Fadnesses with regard to the foreclosure.

Count II of  the Fadnesses' complaint against Kuntz, was an action to quiet title to the real property. The Fadnesses alleged that Kuntz's wife's name was added to the warranty deed without their approval.  Kuntz admitted that he added his wife's name to

the deed while it was in escrow.  Despite these allegations, the jury found that "Fadness
gave real and free consent to Kuntz's alteration of the deed."  The Fadnesses further
alleged that a promissory note was missing and that the mortgage was altered, before it
was returned for recording, by crossing through the amount of the interest rate.  The
Kuntzes denied ever receiving the promissory note.  The jury awarded to the Fadnesses
title to the property, punitive damages in light of Kuntz's actual fraud, and attorney fees
and costs.

The Kuntzes appealed to this Court. We affirmed the jury's verdict and denied
rehearing.  See Fadness v. Kuntz (Mont. March 28, 1996), No. 95-133, slip op. at 13.
The Kuntzes then filed a petition for writ of certiorari with the United States Supreme
Court, which was  denied.  See Fadness v. Kuntz (Mont. March 28, 1996), No. 95-133,
cert. denied (1996), 65 U.S.L.W. 3340, 117 S. Ct. 390, 136 L. Ed. 2d 306.

The Fadnesses are now suing Wimmer, the closing agent, and Cody, the real estate
agent, for breach of their fiduciary duties, their duties of care, and for negligence.
Specifically, the Fadnesses allege that Wimmer was negligent and breached his fiduciary
duty to the extent that the real estate transaction documents were "lost, altered, or forged"
to the Fadnesses' detriment.  The Fadnesses further allege that Wimmer breached his
fiduciary duty by failing to protect their interests by insuring the proper handling of the
closing and the documents involved.  The Fadnesses allege that Wimmer violated the
regulations of the insurance commissioner of the State of Montana by failing to have
written escrow instructions for the closing of the transaction.

The Fadnesses allege that Cody breached her fiduciary duty to assist the Fadnesses
throughout the course of the transaction.  They claim that Cody breached her duty of care
and conduct by not safeguarding and protecting the Fadnesses' interests.  They further
allege that Cody handled the transaction and closing negligently and that she violated the
regulations of the Board of Realty Regulation by failing to advise the Fadnesses that they
should consult legal counsel to determine the effect of the documents involved in the
transaction.  Finally, The Fadnesses allege that Cody was negligent in supervising the
closing to the extent that the documents had been lost, misplaced, stolen, forged, or
otherwise altered.

On March 24, 1997, Wimmer and Cody moved for summary judgment based upon
collateral estoppel and res judicata.  The District Court found that no genuine issue of
material fact exists and that Wimmer and Cody are entitled to judgment as a matter of law.

The District Court framed the basic issue as whether or not Wimmer and Cody are
liable for the structuring and handling of the real estate sale, and for the subsequent
changes made to the documents related to the sale.  Because the jury in the previous

action against Kuntz found that Fadness and Kuntz gave "real and free consent" to the terms of the mortgage and the alteration of the deed, the District Court held that collateral estoppel keeps the Fadnesses from now attempting to prove the facts to be otherwise. The District Court granted Wimmer and Cody's motion and stated that the issue in this case is identical to the issues in the Fadnesses' previous case against Kuntz in which final judgment was rendered and affirmed by this Court. The District Court held that there are no facts to support the allegations made by the Fadnesses with regard to the liability of Cody and Wimmer.

## DISCUSSION

Did the District Court err by granting Cody and Wimmer's motion for summary judgment based on collateral estoppel and lack of sufficient facts to establish liability?

Our standard of review in appeals from summary judgment rulings is de novo. See Motaire v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district courtþs grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. See Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In Bruner, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

It is the Fadnesses' contention on appeal that the present action and the action against the Kuntzes are two separate and distinct causes of action. The Fadnesses argue that in Fadness v. Kuntz, they sought to recover the property from the Kuntzes by foreclosing on the mortgage and quieting title to the property, as well as damages suffered as a natural and probable consequence of the Kuntzes' actions. The Fadnesses note that at no point were Cody and Wimmer a part of the first action and that no damages were sought from the Kuntzes for the wrongs of Cody and Wimmer. According to the Fadnesses, the present action was filed specifically to seek damages from Cody and Wimmer for the harm suffered as a natural and probable consequence of their actions. For these reasons, the Fadnesses contend that the doctrine of collateral estoppel does not apply.

Collateral estoppel, or issue preclusion, bars a party to a prior lawsuit from reopening an issue he or she has already had the opportunity to litigate. See Holtman v. 4-G's Plumbing and Heating (1994), 264 Mont. 432, 439, 872 P.2d 318, 322. The doctrine has three elements:

1)   the identical issue raised has been previously decided in a
prior adjudication;
2)   a final judgment on the merits was issued in the prior
adjudication; and
3)   the party against whom the plea is now asserted was a party
or in privity with a party to the prior adjudication.

Holtman, 264 Mont. at 439, 872 P.2d at 322 (citing State v. Young (1993), 259 Mont.
371, 377, 856 P.2d 961, 965). Our analysis need not proceed beyond the first
element.
    Identity of issues is the most crucial element of collateral estoppel. See
Holtman,
264 Mont. at 439, 872 P.2d at 322; Anderson v. State (1991), 250 Mont. 18, 21, 817
P.2d 699, 702. In order to satisfy this element, the identical issue or "precise
question"
must have been litigated in the prior action. See Holtman 264 Mont. at 438, 872 P.2d
at
322; Anderson, 250 Mont. at 21, 817 P.2d at 702. To determine whether the issue
raised
is identical, we compare the pleadings, evidence, and circumstances surrounding the
two
actions.  See Aetna Life Ins. Co. v. McElvain (1986), 221 Mont. 138, 146, 717 P.2d
1081, 1086.
    It is true that the Fadnesses' prior suit against Kuntz arose from the same events
as their claim against Cody and Wimmer and, like their present claim, sought damages
related to the sale of the Fadnesses' real property.  However, when this claim is
compared to the Fadnesses' mortgage foreclosure, quiet title action, and claim of
fraud
against Kuntz as described above, it is clear that the identical issue, or precise
question,
raised in the present case was not raised and decided in the earlier litigation
involving the
Fadnesses.
     The Fadnesses' prior foreclosure and quiet title action can be read as alleging
an
intentional wrongful act by Kuntz, the breach of the mortgage agreement and Kuntz's
fraudulent conduct, followed by all the damage that flowed therefrom. To the extent
the
prior claim is read in this fashion, it is clear that the issues of the alleged
negligence and
breach of fiduciary duties owed by Cody and Wimmer in the present case, are not
identical.
    Furthermore, the Fadnesses' claim against Kuntz did not raise the issue of Cody
and Wimmer's  negligence in their handling of the real property transaction and
closing.
As we stated in Nautilus Ins. v. First Nat'l Ins. (1992), 254 Mont. 296, 299, 837
P.2d
409, 411, a negligence action is premised, first, on the existence of a duty.  Cody
and
Wimmer have not established that their legal duties to the Fadnesses in handling and
closing the real property transaction were co-extensive with the duties owed them by
the

Kuntzes.  The fact that each action arises from the same transaction does not mean that
each involve the same issues.

We conclude that the "identical issue" element of collateral estoppel is not met under the circumstances in this case.  The duties owed by Cody and Wimmer to the Fadnesses were not decided, nor even considered by the jury in the first case. Moreover, the District Court's other reason for granting Cody and Wimmer's motion for summary judgment, that the Fadnesses presented insufficient facts to support an allegation that Cody and Wimmer are liable, was not an issue before the District Court and was not a basis upon which Cody and Wimmer relied in their motion for summary judgment. Therefore, we hold that the District Court erred when it based summary judgment, in part, on its conclusion that  the Fadnesses presented insufficient evidence to demonstrate liability, that they are collaterally estopped from asserting claims for negligence and breach of fiduciary duties, and when it granted summary judgment in favor of Cody and Wimmer.

We therefore reverse and remand this case for further proceedings consistent with this opinion.

/S/   TERRY N. TRIEWEILER

We Concur:

/S/   J. A.   TURNAGE

/S/   WILLIAM E. HUNT, SR.

/S/   JAMES C. NELSON
Justice W. William Leaphart, specially concurring.

Due to the incomplete state of the record in this appeal, I have no choice but to concur in the result reached by the court.

Even assuming that the real estate agent and the closing agent owed duties of care to the sellers and that they breached those duties and thereby rendered the mortgage potentially invalid, it is not clear to me that the Fadnesses, in fact, suffered damages which were not fully recompensed when they successfully litigated a mortgage foreclosure action against Kuntz.  Fadness v. Kuntz (1996), No. 95-133 (Fadness I).

Although, in the present matter, Cody and Wimmer requested that Fadnesses file a statement of damages, Fadnesses did not respond to that request. Thus, in terms of trying to understand Fadnesses' theory of damages, we are left with nothing other than Fadnesses' somewhat less than specific  prayer for "such damages as they may prove at trial."

In Fadness I, Fadnesses sued Kuntz to foreclose the purchase money mortgage and to quiet title in their name.  As the court states, Fadnesses were successful in their foreclosure action, they quieted title to the property and obtained an award of punitive

damages plus their fees and costs.  They cannot obtain a deficiency judgment for any outstanding balance on the debt.  Section 71-1-232, MCA.   I am at a loss as to what further damages, if any, Fadnesses may have incurred as a result of Wimmer's and Cody's alleged negligence in allowing Mrs. Kuntz's name to appear on the deed but not on the mortgage.  However, since the summary judgment was based upon collateral estoppel rather than failure to state a claim for damages, and since Fadnesses have not

yet responded to the request to state their damages, I must give them the benefit of the

doubt and let the matter proceed.

/S/  W. WILLIAM LEAPHART