**In re Gilbert E. THIEL, Debtor.**

**Conrad Thiel, Plaintiff,**

**v.**

**Gilbert E. Thiel, et ux., Defendants.**

**Bankruptcy No. 00–10373–8C3.**
**Adversary No. 01–0138.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 26, 2001.

See also 270 B.R. 785.

Shirley C. Arcuri, Tampa, FL, for Plaintiff.

Joel S. Treuhaft, Venice, FL, for Defendants.

**636**

Terry Smith, Bradenton, FL, trustee.

*ORDER GRANTING PLAINTIFF'S MO-
TION FOR SUMMARY JUDG-
MENT AND GRANTING IMPLE-
MENTATION RELIEF*

C. TIMOTHY CORCORAN, III,
Bankruptcy Judge.

This adversary proceeding came on for hearing on July 10, 2001, of the plaintiff's motion for summary judgment (Document No. 11). The plaintiff seeks a summary judgment imposing an equitable lien on the homestead of the defendants, the debtor and his wife, for the debtor's actual fraud in the liquidation and conversion of proceeds from the plaintiff's certificates of deposit ("CDs") to pay off the mortgage on the defendants' homestead.

At the hearing, the court entertained argument and requested that the parties file post-hearing briefs. The plaintiff filed a brief (Document No. 16) on September 4, 2001. The defendants did not file a brief. The summary judgment record relied upon by the parties at the hearing consisted of the complaint (Document No. 1), the debtor/defendant's answer and affirmative defenses (Document No. 8),[1] and copies of documents from a Montana state court proceeding.[2] The state court documents consist of the state court complaint for conversion and injunctive relief dated July 24, 1998; an affidavit of Gilbert Thiel (the debtor/defendant here) dated December 7, 1998; the state court's findings of fact, conclusions of law, and order dated June 6, 2000; and the state court's judgment dated June 14, 2000.

The court has reviewed the record and considered the argument, papers, and authorities presented by the parties. The granting of summary judgment is controlled by F.R.B.P. 7056 which adopts F.R.Civ.P. 56. F.R.Civ.P. 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "There is no genuine issue for trial where the record could not lead a rational trier of fact to find for the non-moving party." *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). "The party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact in the case." *Id.* The court is required to consider the evidence in the light most favorable to the non-moving party. *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 783 (11th Cir.1988).

*I.*

The summary judgment record reveals the following undisputed facts:

The plaintiff, Conrad Thiel, is the debtor/defendant's father. On July 24, 1998, Conrad and Helen Thiel filed a civil complaint in Montana state court against the debtor and two banks that were the depositories of CDs owned by the plaintiff. The plaintiffs sought injunctive relief and damages for conversion and actual fraud. The action came on for trial before the state

---

1. The defendant/wife did not file an answer. The court infers that the parties intended that the debtor/defendant's answer also apply to his wife, and the court will treat it so.

2. The plaintiff filed certified copies of these papers (Main Case Document No. 16) in support of his motion for summary judgment as to his objection to exemptions (Main Case Document No. 15). The defendants' attorney consented to the use of uncertified copies as part of the summary judgment record in this adversary proceeding.

court sitting without a jury on May 13, 2000. The debtor was present at the trial and represented by counsel. He testified on his own behalf. The state court entered findings of fact, conclusions of law, and order on June 6, 2000.

The state court determined that the plaintiff resided in Billings, Montana, with his wife, Helen, who he married in 1981 after the death of the debtor's mother. The plaintiff's life savings were deposited in CDs held in local banks. The plaintiff intended to use the proceeds of these CDs to pay his living expenses during retirement. The plaintiff titled the CDs in both his and the debtor's names, however, to ensure that any monies remaining upon his death would pass directly to the debtor.

In June 1998, the plaintiff and the debtor went to the two banks holding the CDs and had the plaintiff's name removed from the CDs for the purpose of allowing the debtor to reinvest the money for the plaintiff's benefit. The plaintiff, in a subsequent phone call to the debtor, asked the debtor to return ownership of the CDs to him. Instead, the debtor redeemed the CDs and had the funds transferred to his personal bank account in Florida. The debtor then used the proceeds of the CDs to pay off the mortgage on his homestead located at 1650 Liscourt Drive in Venice, Florida. The debtor effected the pay off by sending an outgoing wire transfer in the amount of $98,597.33 to Southtrust Mortgage Corporation, the mortgage company holding the mortgage on the debtor's homestead.

The court further found that the debtor's actions as described above constituted conversion and actual fraud. The court specifically found that the debtor's actions satisfied the requisite elements needed to establish actual fraud pursuant to Montana state law. Those elements are: "(1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) the speaker's intent that it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by the reliance on the representations." (Document No. 12, Findings of Fact, Conclusions of Law, and Order, at p. 5, lines 25–28, and at p. 6, lines 1–6). The Montana state court also concluded that the debtor "had no intention of reinvesting the funds [from the CDs] or even returning the funds to his father." (Document No. 12, Findings of Fact, Conclusions of Law, and Order, at p. 6, lines 6–8). The state court further found that the debtor used the proceeds from the CDs to pay off the mortgage of his homestead, thereby depriving plaintiff of his ownership interest in the proceeds. (Document No. 12, Findings of Fact, Conclusions of Law, and Order, at p. 6, lines 7–13). On June 14, 2000, the Montana state court entered judgment against the debtor in the amount of $109,974.75 and costs in the amount of $1,189.42.

On July 3, 2000—19 days later—the debtor filed a petition in this court under Chapter 13 of the Bankruptcy Code. In his schedules, the debtor listed the plaintiff as his only creditor. The debtor claimed as exempt his jointly owned homestead located at 1650 Liscourt Drive, Venice, Florida, the legal description of which is:

Lot 82, WATERFORD, PHASE ONE–B SUBDIVISION, according to the plat thereof, recorded in plat Book 32, pages 36 and 36A, of the Public Records of Sarasota, County, Florida.

The court established November 3, 2000, as the date by which creditors were re-

quired to file-claims. The plaintiff timely filed an unsecured claim in the amount of $110,547.22 (Claim No. 2).[3] The debtor's Chapter 13 plan (Main Case Document No. 2) proposed to pay the plaintiff's claim at a discounted rate of 20 percent.

Conrad Thiel filed an objection to the debtor's Chapter 13 plan (Main Case Document No. 11) and an objection to the debtor's claim of exemption of his homestead (Main Case Document No. 7). Conrad Thiel also filed this adversary proceeding against the debtor and his wife seeking to establish an equitable lien on the homestead. The court has continued the hearing of the objection to exemption and the confirmation hearing pending the determination of this adversary proceeding (Main Case Document No. 23).

## II.

■ The plaintiff seeks to impose an equitable lien on the defendant's homestead on the basis of the debtor/defendant's actual fraud and conversion of proceeds from his father's CDs in payment of the outstanding balance on the mortgage obligation for that homestead. In their defense, the defendants contend that the imposition of an equitable lien will effectively make non-dischargeable a debt that would otherwise be dischargeable pursuant to Section 1328 of the Bankruptcy Code. The defendants complain that this result would impermissibly frustrate the purpose of the Bankruptcy Code.

The defendants have not advanced any legal basis to support this defense, and the court concludes that it is without merit. The plaintiff is not seeking to collect his debt in this adversary proceeding. The plaintiff is seeking merely to establish an equitable lien—a security interest—in the defendants' property. It is true that the debt relied upon for the imposition of the

equitable lien is a debt that would otherwise be subject to the super-discharge afforded by Section 1328 of the Bankruptcy Code. This presents no impediment to the imposition of an equitable lien, however, if the plaintiff can establish the requisite legal basis to establish an equitable lien under Florida law as of the petition date. *See, e.g., Maurer v. Maurer (In re Maurer)*, 267 B.R. 639, 652 (Bankr.M.D.Fla. 2001) [Chapter 13 case in which the court imposed an equitable lien on homestead]. The consequences to the debtor/defendant of the imposition of an equitable lien, if one is imposed, and its effect on his ability to reorganize his debts are separate issues with which to deal at the time of confirmation.

■ "The purpose of an equitable lien is to achieve right and justice, considering the relations of the parties and the circumstances of their dealings." *Fidelity Service Co. v. Grocki (In re Grocki)*, 147 B.R. 274, 278 (Bankr.S.D.Fla.1992). The court imposes an equitable lien to prevent unjust enrichment to the wrongdoer. *Palm Beach Savings & Loan Association v. Fishbein*, 619 So.2d 267, 270 (Fla.1993).

■ "When an equitable lien is sought against homestead real property, some fraudulent or otherwise egregious act by the beneficiary of the homestead protection must be proven." *Id.* In addition, the party seeking the equitable lien must trace the proceeds derived from the fraudulent or egregious conduct directly to the purchase, pay off, or improvement of the homestead. *Havoco of America, Ltd. v. Hill*, 790 So.2d 1018, 1028 (Fla.2001). A homestead upon which an equitable lien is imposed is subject to forced sale. *Id.* at 1024–128 [gathering cases].

In this case, the plaintiff asserts that the Montana state court's determination that

---

3. Universal Card Services a/k/a AT & T also filed an unsecured claim in the amount of $164.27 (Claim No. 1). There were no other claims filed in this case.

the debtor/defendant acted fraudulently in obtaining and converting the proceeds from Conrad Thiel's CDs to pay off the mortgage indebtedness on the defendants' homestead establishes the requisite basis for the imposition of an equitable lien under the doctrine of collateral estoppel.

 Collateral estoppel prohibits relitigation of issues adjudicated in a prior court action. *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675 (11th Cir.1993). The doctrine of collateral estoppel is applicable to proceedings in bankruptcy. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Where the prior court action was determined in another state, as is the case here, the law of that state establishes the predicate required to apply the doctrine of collateral estoppel to the findings and determinations made in the prior action. *St. Laurent,* 991 F.2d at 675.

 In Montana, courts have held that the doctrine of collateral estoppel has three elements that must be established in the action in which the party seeks to collaterally estop the litigation of any fact or issue. *Fadness v. Cody,* 287 Mont. 89, 951 P.2d 584, 588 (1997). The first and most crucial element that the plaintiff must establish is an identity of issues in the prior and subsequent actions. *Id.* The second element that the plaintiff must demonstrate is a final adjudication on the merits of those issues in the prior court. *Id.* The third and final element that the plaintiff must establish is an identity of the parties or their privies in the prior and subsequent action. *Id.*

The plaintiff has established all three of these elements in this proceeding. The plaintiff's equitable lien is based upon the debtor's fraud and conversion and the pay off of the defendants' mortgage with the proceeds. The Montana state court was asked to determine exactly those issues. The Montana state court held a trial, at which the debtor testified, and rendered a final decision on the merits. The Montana state court specifically found that the plaintiff had established all of the elements of actual fraud.[4] The Montana state court also specifically found that the debtor used a portion of the proceeds of the fraud to pay off the balance of the mortgage indebtedness on his homestead. The debtor was the defendant in that action and is a defendant in this action. The plaintiff has therefore satisfied all of the elements required to establish the debtor's actual fraud in the conversion of the plaintiff's CDs and use of the proceeds to pay off the balance owing on the defendants' homestead.

Accordingly, the court determines that the debtor's actions in converting the plaintiff's CDs to his own use is sufficient to establish the predicate fraudulent or egregious act necessary to impose an equitable lien. Similarly, the plaintiff has established pursuant to the doctrine of collateral estoppel that the debtor used the proceeds he fraudulently converted from the plaintiff's CDs to pay off the existing mortgage on the defendants' homestead. Accordingly, the court determines that the plaintiff has satisfied the tracing element necessary to impose an equitable lien.

 The plaintiff also contends that the court's determination that the debtor/defendant acted fraudulently in obtaining and converting the proceeds of the plaintiff's CDs should be imputed to the

---

4. These elements are substantially the same as the elements required under Florida law. *Lance v. Wade,* 457 So.2d 1008, 1011 (Fla. 1984) [essential elements of actual fraud are (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the interpretation].

defendant/wife, Bobbie J. Thiel, as a privy of the debtor/defendant/husband pursuant to the doctrine of collateral estoppel. The plaintiff does not cite any legal authority in support of this contention, and indeed the court can find none.

In determining whether a party is a privy under Montana state law for purposes of collateral estoppel, the court focuses on "whether [the party's] legal right or interest has been represented by the previous litigant." *Holtman v. 4–G's Plumbing & Heating, Inc.*, 264 Mont. 432, 872 P.2d 318, 321 (1994). Alternatively, the party may be "so connected in estate or in blood or in law as to be identified with the same interest and, consequently, affected with each other by litigation." *Id.*

In this case, the defendant/wife clearly does not have the same interest as the debtor/defendant in a fraud action brought against him merely by the existence of the marital relationship. The defendant/wife was not a party to the fraud action, and her rights and interests were therefore not represented in that action. Accordingly, the court determines that the plaintiff has failed to establish or impute any fraud on the part of the defendant/wife.

This determination, however, does not impair the court's ability to impose an equitable lien provided that the proceeds of the fraud can be traced to the jointly owned homestead, as is the case here. In *Fishbein*, the court was asked to impose an equitable lien on real property owned by the innocent ex-wife of the wrongdoer. *Fishbein*, 619 So.2d at 269. The court did so, relying on the equitable underpinnings of the equitable lien doctrine because it found that encumbering the real property with an equitable lien caused the innocent wife to "stand in no worse position than she stood before the [wrongdoing]." *Id.* at 270. *See also Synod of South Atlantic Presbyterian Church v. Magpusao (In re Magpusao)*, 265 B.R. 492, 502 (Bankr.

M.D.Fla.2001) [court imposed equitable lien on jointly owned homestead on account of wife's theft of employer's funds and use of stolen monies to make down payment and subsequent payments of mortgage obligation].

The facts of this case fall squarely within the principles of these authorities. But for the debtor's wrongdoing in converting the CDs and using the proceeds to pay off the joint obligation on the jointly owned homestead, Southtrust Mortgage Corporation would have continued to hold a purchase money security interest in the real property. The defendant/wife would have continued as a joint obligee on that debt encumbering the jointly owned property. If the court imposes an equitable lien on the defendants' homestead, the defendant/wife will plainly be no worse off than she was before the debtor's wrongdoing.

### III.

For the reasons stated above, the court concludes that the plaintiff's motion is hereby granted. The summary judgment record establishes that there is no genuine issue as to any material fact, the plaintiff has established the necessary predicate to justify the court's imposition of an equitable lien in favor of the plaintiff on the defendants' homestead, and the plaintiff is entitled to judgment as a matter of law. The court therefore determines that Conrad Thiel shall have an equitable lien in the amount of $98,597.33 on the defendants' homestead located at 1650 Liscourt Drive.

Pursuant to the provisions of F.R.B.P. 7054(b), the plaintiff shall be entitled to taxable costs provided that the plaintiff files his bill of costs within the time prescribed in L.B.R. 7054–1.

Pursuant to the provisions of F.R.B.P. 9021, the court will enter a separate judgment consistent with the provisions of this order.

As a consequence and to implement the foregoing, the court further orders as follows:

The plaintiff's claim, Claim No. 2, is hereby allowed as a secured claim in the amount of $98,597.33 and an unsecured claim in the amount of $11,949.89 for purposes of payment under the debtor's Chapter 13 plan.

The court hereby modifies the automatic stay to permit the plaintiff to record the court's judgment and other papers in the public records of Sarasota County, Florida, as may be required, to perfect and record the plaintiff's equitable lien.

By separate notices, the clerk shall schedule a preliminary hearing of the plaintiff's objection to the debtor's claim of exemption and a confirmation hearing.