In re Reginald Bernard CRUM, Debtor.

Merchants & Contractors Capital
Corporation, Inc., a Florida
corporation, Plaintiff,

v.

Reginald Bernard Crum and Kenya
Adkins Crum, Defendants.

Bankruptcy No. 02–00845–3P3.
Adversary No. 02–107.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 2, 2003.

David J. Pinkston, Pinkston & Pinkston, P.A., Jacksonville, FL, for Debtor.

Mamie L. Davis, Jacksonville, FL, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This Proceeding is before the Court upon the complaint filed by Merchants & Contractors Capital Corporation, Inc. ("Merchants"), seeking the imposition of an equitable lien on homestead property owned by Defendants, Reginald B. Crum ("Crum") and Kenya A. Crum. After a trial on January 30, 2003 and February 20, 2003 the Court makes the following Findings of Fact and Conclusions of Law:

### FINDING OF FACT

1. In 1997, Reginald Crum, Defendant Husband, formed Florida Sod, Inc. "Florida Sod."

2. In 1998, Florida Sod was awarded a lawn maintenance contract with the Duval County School Board. (T 15–16, 97).

3. In order to fund the up-front costs of servicing the contract Defendant Hus-band went to the Plaintiff to obtain financing. (T 17,98).

4. In March of 1998, the Plaintiff and Florida Sod entered into a series of agreements which provided that Merchants would purchase, or "factor", the invoices submitted to the School Board. (Ex. 19–22).

5. Pursuant to the factoring agreement, the Plaintiff advanced Florida Sod 70% of the amount of the receivable. The other 25% was to be paid when the Plaintiff received payment on the factored invoice. Plaintiff retained the remaining 5%. (Ex. 20).

6. In a separate agreement, the Plaintiff leased to Florida Sod the necessary equipment needed for the School Board Contract. (Ex. 22).

7. Florida Sod lost the School Board contract after one year. (T 21–22). However, it was still indebted to Plaintiff and needed to repay the debt.

8. After, Florida Sod lost the School Board contract, Plaintiff and Florida Sod reaffirmed the continuation of a factoring arrangement, in which Plaintiff agreed to finance construction contracts bid on by Florida Sod. In conjunction with this, Defendant signed a $150,000 promissory note that was secured, in part, by a security interest in all receivables of Florida Sod. (T 26, 24) (Ex. 24). The note bore an interest rate of 14.5%. (Ex. 23).

9. In a letter dated July 12, 1999, Plaintiff reaffirmed the continuation of the factoring agreement. (Ex. 25).

10. Defendant Husband also agreed to sign Administrative Service Agreements for each contact Florida Sod entered into.

11. Florida Sod was required to factor all its receivables through Plaintiff as long as any money remained due un-

der the line of credit. (Ex. 24–25, 28, 61) (T 106–107). Additionally, all payments received by Florida Sod on factored receivables was to be turned over to the Plaintiff. (Ex. 21) (T 20–21).

12. In November of 1999, Plaintiff increased Florida Sod's line of credit up to $250,000. (Ex. 27).

13. In July of 2000, Defendant Husband opened a bank account at Sun Trust Bank. (Ex. 40).

14. Between July 2000 and June 2001, $454,536.16 was deposited into the Sun Trust account by Defendant Husband. (Ex. 54). Approximately, $268,602.45 of these deposits came from money the Defendant Husband diverted from jobs that were to be factored through the Plaintiff. (Ex 52). The remaining $185,933.71 in the account represents money he earned from side jobs he performed unbeknownst to Plaintiff.

15. The funds Defendant Husband used to construct his and his wife's current home located at 1730 Raiford Road, Starke, Florida were earned from side jobs he had perfomed.

16. Defendants' home has a value of approximately $265,000. (T 64).

17. Defendant Husband wrote approximately $135,167.45 in checks from his Sun Trust account and Florida Sod's First Union bank account to pay for the cost of the residence. (Ex. 39) (T 48–58).

18. Without the money from the Sun Trust account Defendant Husband admitted he could not have afforded to build his current residence. (T 64, 71).

19. By November of 2000, the amount of available credit had been exceeded by the amount Florida Sod had drawn upon it. As a result, Florida Sod agreed to enter into a workout agreement with the Plaintiff so that its security interest would not be foreclosed. (T 36). As part of the agreement, Defendant Husband agreed not to:

(1) Obligate Florida Sod in any way without the written consent of the CEO and written approval by Merchants;

(2) Receive or deposit any checks;

(3) Compete against Florida Sod;

(4) Work or perform any job outside of Florida Sod without the express permission of the CEO, and approval by Merchants;

(5) Take any monies from Florida Sod for personal reasons; or

(6) Engage in any business or discussions harmful to Florida Sod. (Ex. 31) (T 39–40).

20. Plaintiff terminated the Defendant Husband on March 12, 2002. (T 41, 117–118).

21. Defendant Husband has filed for bankruptcy three times under Chapter 13 of the Bankruptcy Code. (Ex. 65). Defendant Husbands's first petition was filed in January of 2002; the second was filed in July of 2002; and the third was filed in December of 2002.

### CONCLUSIONS OF LAW

■ The issue before the Court is whether an equitable lien should be imposed upon Defendants' homestead. Plaintiff argues Defendant Husband used funds belonging to Plaintiff to purchase and construct his homestead. Defendants deny Plaintiff's allegations. Defendant Husband asserts the money used to purchase the homestead came from side jobs he performed outside of his agreement with the Plaintiff.

### The Homestead Exemption

■ The Florida Constitution shields a Debtor's homestead by providing that:

"There shall be exempt from forced sale under process of any Court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by natural person: (1) a homestead ..."

Fla. Const. Art. X, § 4(a)(1).

However, statutory provisions relating to the homestead exemption should not be applied so as to make them an "instrument of fraud or imposition upon creditors."

*Milton v. Milton,* 63 Fla. 533, 58 So. 718 (1912).

■ Florida Courts liberally apply Florida's homestead exemption in favor of protecting the family home except in instances where fraud may be involved. *Havoco of Am. v. Hill,* 790 So.2d 1018, 1020 (Fla. 2001). In *Havoco,* the Florida Supreme Court stated that while its equitable lien jurisprudence did not create a fourth "fraud exception", it did not hesitate to "invoke equitable principles to reach beyond the literal language of the exceptions... where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." *Id.* at 1027.

### Equitable Lien Doctrine

■ An equitable lien is, "a remedial tool used to prevent an inequity of one party against another, and may be used as a means of enforcing against a piece of property, a party's obligation that has resulted in a benefit to that property."

34 Fla. Jur.2d Liens § 4 (2000)

■ An equitable lien may be imposed upon homestead property acquired through fraud or improper means. *In re Magpusao,* 265 B.R. 492 (Bankr.M.D.Fla. 2001). In *Magpusao,* this Court imposed an equitable lien upon a debtor's homestead property based upon a finding that the debtor used converted funds to fraudulently acquire the property.

■ In addition to proving the funds used to acquire the homestead were obtained fraudulently, the party seeking to impose the equitable lien must "trace the proceeds derived from the fraudulent or egregious conduct directly to the purchase, pay off, or improvement of the homestead." *Havoco,* 790 So.2d 1018, 1028 (Fla. 2001), *In re Thiel,* 275 B.R. 633 (Bankr. M.D.Fla.2001).

■ Finally, if the proceeds of Defendant Husband's fraud can be traced directly to the jointly owned homestead, the court's ability to impose an equitable lien is not impaired by the fact that no fraud has been established on the part of Defendant's wife. *In re Thiel,* 275 B.R. 633 (Bankr.M.D.Fla.2001), *Palm Beach Savings & Loan Association v. Fishbein,* 619 So.2d 267 (Fla.1993). In *Fishbein,* the court imposed an equitable lien on property owned by an innocent former wife whose husband had committed fraud. In reaching its decision, the court reasoned that encumbering the property with an equitable lien would cause the former wife to "stand in no worse position than she stood before the [wrongdoing]." *Id.* at 270.

In the instant case, the Plaintiff argues that the funds deposited into the First Union and Sun Trust account came solely from funds the Defendant Husband acquired through jobs that were to be specifically factored through the Plaintiff or

from side jobs the Defendant Husband performed. Additionally, Plaintiff asserts that Defendant Husband's Sun Trust account was a "secret" bank account and that between July 2000 and June 2001 he deposited $454,536.16 into the account. (Ex. 54). Of the $454,536.16 deposited into the Sun Trust account, Plaintiff asserts $268,602.45 represents payments received by Florida Sod and diverted by the Defendant Husband on jobs that were to be specifically factored through Plaintiff. (Ex.52) The Plaintiff argues the remaining amount, $185,933.71, represents funds the Defendant Husband earned while performing side jobs unbeknownst to the Plaintiff and in violation of the work out agreement entered into by the parties.

Although Defendant Husband admits to diverting funds from at least a portion of two jobs that were supposed to be factored through the Plaintiff, he denies Plaintiff's assertion that he used Plaintiff's line of credit to pay for costs associated with the side jobs he performed. Defendant Husband further asserts that he paid for his homestead with the proceeds he made from performing the side jobs.

Although there is evidence to support Plaintiff's assertion that Defendant Husband did fraudulently divert funds into his Sun Trust account that were to be factored through the Plaintiff, the Plaintiff has not proffered ample evidence that Defendant used Plaintiff's line of credit to pay for the costs associated with the side jobs he performed. Therefore, the Court finds the money Defendant Husband made by performing side jobs does not rise to the level of fraud or egregious conduct necessary for the imposition of an equitable lien. Additionally, the $185,933.71, Defendant Husband made from performing side jobs, exceeds the $135,167.45, that can be directly traced to payments the Defendant Husband made towards the purchase of his homestead.

## CONCLUSION

Based upon the foregoing, the Plaintiff is not entitled an equitable lien. Judgement will be entered in favor of the Defendants and a separate order will be entered in accordance with these Findings of Fact and Conclusions of Law.