No. 04-827

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 51

WILLIAM BALTRUSCH and BALTRUSCH
LAND & CATTLE COMPANY,

Plaintiffs and Appellants,

v.

OTTO BALTRUSCH, JR., and FRANCES
BALTRUSCH, Husband and Wife,

Defendants and Respondents.

APPEAL FROM: The District Court of the Twelfth Judicial District,
In and For the County Hill, Cause No. DV 2002-189,
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

  For Appellants:

   K. Dale Schwanke, Jardine, Stephenson, Blewett & Weaver,
   Great Falls, Montana

  For Respondents:

   James A. Patten, Patten, Peterman, Bekkedahl & Green,
   Billings, Montana

Submitted on Briefs: October 26, 2005

Decided: March 7, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      William Baltrusch and Baltrusch Land & Cattle Company (William, collectively) sued his brother and business partner Otto Baltrusch, Jr. (Otto) and Otto's wife Frances Baltrusch (Frances) to recover Partnership funds allegedly misappropriated by Otto and Frances for their personal use.  The District Court granted Otto and Frances's motion for summary judgment, reasoning that William's claims are barred by the doctrines of collateral estoppel and *res judicata*.  William now appeals the District Court's dismissal of his claims against Frances.  We affirm.

¶2      The issue presented is whether the District Court erred when it concluded that the doctrines of *res judicata* and collateral estoppel preclude William from pursuing his claims against Frances.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      This feud between two brothers and erstwhile business partners has been languishing in the courts of Montana for nearly fourteen years now.  Sometime around 1940, William and Otto went into business together and formed the Baltrusch Land & Cattle Company, a general partnership (the Partnership).  Over the years, the Partnership fared quite well financially and expanded into several other businesses.  Beneath the surface of this profitable venture, however, a tempest brewed.  The trouble surfaced in 1992 when William initially filed a complaint against Otto, seeking damages and an accounting for Otto's alleged misappropriation of Partnership assets.  Frances was never joined as a party to this initial cause of action.

2

¶4     The first of two trials in the initial cause of action occurred in December 1999.  In the pretrial order, William contended that Otto had misappropriated property of the Partnership to the benefit of members of his family (including, presumably, Frances) and asked the court to order Otto to repay "all sums he owes the partnership arising from and out of the violation of his obligations to the partnership . . . ."  William further contended that "Otto has done, caused to be done, or allowed to be done the following":  "caused personal obligations to be paid by the partnership" including for utilities, groceries, telephone, fuel, real estate taxes on the personal residence shared by Otto and Frances, and the expense of installing a gas line servicing their residence; "converted income of the partnership to his own use and benefit"; and used Partnership funds to pay "personal debt owed by Otto and Frances."  The District Court found that Partnership funds had been used to pay for electric bills, real estate taxes and the cost of a gas line for the residence shared by Otto and Frances, their life insurance premiums, their personal vehicles, and some groceries purchased by Frances.  The court ordered Otto to reimburse the Partnership for these personal expenditures.  The court also determined, based on Frances's testimony that she had separated their personal credit card charges and paid them separately from the business charges, that Otto should not be chargeable for any credit card expenditures.  The court did note, however, that it lacked "jurisdiction to make any determination as to amounts that are claimed to be owed . . . by . . . third parties to the brothers or the business entities."  The court ordered the assets of the Partnership sold and the proceeds equally distributed, with an adjustment made—reflecting the fact

3

that Otto had received more in the form of insurance payments and compensation—to equalize the distribution. On appeal, we affirmed the District Court. *Baltrusch v. Baltrusch*, 2003 MT 357, 319 Mont. 23, 83 P.3d 256. We noted that Otto had met his duty "to account for the personal credit card expenses," and that "[b]ecause William had ample opportunity to inspect the credit card invoices," the District Court properly refused to hold Otto liable for those purported personal expenses based on William's random sampling of invoices. *Baltrusch*, ¶ 53. In essence, we held that William's lack of diligence during discovery precluded him from bringing a claim that lacked adequate evidentiary support.

¶5     While the appeal of the first trial in the initial cause of action was pending, a second trial was held in July 2003 to resolve alleged misappropriations and violations of the court's judgment and order that had occurred subsequent to the first trial. Prior to this hearing, William filed a motion to consolidate the initial cause of action with the present suit, which he had filed against Otto and Frances in 2000. Despite William's argument at the hearing on this motion that his initial suit against Otto and the subsequent suit against Otto and Frances "involve exactly the same facts, and the only question on that would be what participation did Frances have," the court denied his motion to consolidate.[1]

---

[1]William argued further that, "the same evidence that's going to come in in the initial case with respect to Otto and his utilization of the corporate assets, the charging of personal expenses to the partnership assets, the charging of personal assets on partnership credit cards, and paying those with farm partnership funds; the only difference between that claim as it was, is now we know Frances was involved in that also, or at least we are alleging that. So, as a practical matter, all we have done is alleged that there are actions

4

¶6    The pretrial order for the second trial indicates that William contended that Otto violated his fiduciary duty and his duty of loyalty by misappropriating funds to his own use and to the benefit of family members, including Frances, and commingled Partnership funds with his own.  William further contended that "Otto has tortiously done, caused to be done, or allowed to be done the following":  paid personal expenses, such as utilities, groceries, fuel and telephone, with Partnership funds; converted Partnership income and funds to his own benefit; conspired to utilize Partnership funds to pay for personal expenses; and "withdrawn funds from the Partnership that could have been utilized to pay debts owed" by the Partnership.  Although conceding that the court ordered that such claims against Frances be tried in the present case, William then contended that "[m]any, if not all of the foregoing actions were taken or accomplished by Otto in concert with, and by conspiring with his wife, Frances."  William also asserted that Otto and Frances have continued to charge personal expenses to the Partnership and pay for them with Partnership funds and that this constitutes conversion of Partnership funds and property as well as constructive fraud, if not fraud.  William claimed that Otto is liable to the Partnership for "any sums that have been expended by the Partnership for the benefit of Frances," and requested that the court impose a constructive trust on the assets of Otto and Frances to enable the Partnership to recoup its losses, including those funds misappropriated or converted by Otto in concert with Frances.  Nevertheless, William sought to recover for *all* of the purported misappropriations and conversions—

taken by Otto that Frances is also involved in . . . .  [T]he only difference would be that Frances then would also be involved."

5

whether accomplished by Otto directly or by Frances—by way of an "equalizing distribution" of Partnership funds to William before Otto receives any further distributions from the liquidation of the Partnership.

¶7     Although the pendency of various motions prevented entry of final judgment for the July 2003 trial, the court issued its judgment and order on November 1, 2004.  The court found that "there is no equitable reason to impose a constructive trust on any of [Otto's] assets," because Otto's assets would suffice to satisfy any judgment in favor of William.    The court found that William failed to prove the extent of personal expenditures charged by Otto to business credit cards.  Finally, the court treated Otto's draws on his Partnership account as "compensation" and ordered Otto to make a lump payment to the Partnership in order to equalize the discrepant "compensation" received by him and William.

¶8     All of the foregoing describes just the decadal litigation that preceded the case now before us.  Meanwhile, immediately following the first trial, William apparently determined that he should seek relief against Frances, and he filed a complaint against Otto and Frances in the present case.  In his amended complaint, filed in September 2002, William alleges that Frances "was a signatory to the Partnership checks utilized to pay various . . . personal expenses of Otto and/or Frances, *which both knew* were not properly chargeable to, nor payable by the Partnership."  (Emphasis added.)   William further alleges that "Otto, with the assistance and the complicity of Frances, have [sic] continued to pay personal expenses with Partnership funds," in breach of his duties to the

6

Partnership. The amended complaint then alleges six distinct claims: breach of contract; fraud and deceit; conversion; conspiracy; complaint for accounting; and constructive trust. The breach of contract claim seeks judgment solely against Otto. The fraud and deceit claim refers to the acts listed above and avers that these acts of "Otto and Frances" constitute fraud, constructive fraud or deceit and seeks judgment against Otto and Frances jointly and severally. The conversion claim likewise references the above mentioned acts, alleges that "Otto and Frances converted personal property of the Partnership," and requests joint and several relief. The conspiracy claim refers to the same acts, asserts that Otto and Frances "conspired together with the intent to injure William and the Partnership," and in furtherance of the conspiracy, "paid a variety of their personal expenses with Partnership funds and utilized Partnership assets for their personal purposes," including the purchase of personal vehicles, and seeks judgment against Otto and Frances. The accounting claim seeks "an accounting from Otto and Frances for their use of Partnership funds and assets." Finally, the constructive trust claim asks the court to impose a constructive trust on "all assets . . . that . . . Otto and Frances, or either of them, have acquired through the use of, or expenditure of, Partnership assets and funds . . . ." Thus unfolded the second scene in this compelling courtroom drama that has, like a maimed, flightless butterfly, lethargically emerged from the cocoon of the Baltrusch brothers' family feud.

¶9    The District Court granted defendants' motion for summary judgment in the present case, reasoning that William's claims are barred by the doctrines of *res judicata*

7

and collateral estoppel. The court noted that William has admitted that his claims against Otto, based on Otto's diversion of Partnership funds to personal use before January 1, 2003, already have been or could have been presented in the earlier case and cannot be pursued in this case. The court reasoned that the amended complaint alleges that Otto and Frances acted *together* to the detriment of William, that "[t]here is no allegation that Frances alone used Partnership funds for personal reasons[,]" and that Otto and Frances are in privity "because they are so closely connected to the allegations by the Plaintiffs as to be identified with each other in interest and consequently to be affected by the litigation." Accordingly, the court held that William's claims against Frances, as well as against Otto, are barred by the doctrines of *res judicata* and collateral estoppel.

¶10 William concedes that the District Court properly granted summary judgment in favor of Otto. We will provide additional factual information as necessary below.

## STANDARD OF REVIEW

¶11 We review a District Court's grant of summary judgment *de novo*. *Kullick v. Skyline Homeowners Assoc.*, 2003 MT 137, ¶ 13, 316 Mont. 146, ¶ 13, 69 P.3d 225, ¶ 13. We apply the standard declared by Rule 56, M.R.Civ.P. The moving party must establish the absence of a genuine issue of material fact and her entitlement to judgment as a matter of law. *Kullick*, ¶ 13. We review a district court's conclusions of law to determine whether they are correct. *Kullick*, ¶ 13.

## DISCUSSION

¶12    William has conceded that the District Court properly determined that he may not seek relief from Otto in this suit. We now turn to whether the District Court erred when it concluded that the doctrines of *res judicata* and collateral estoppel preclude William from pursuing his claims against Frances.

¶13    William argues that the District Court erroneously dismissed his suit against Frances based on the doctrines of collateral estoppel and *res judicata* because the issues raised in this case are not identical to those that were raised and decided in the earlier case against Otto. He notes that the court ruled based on the pleadings, which do not disclose the specific transactions in which Frances allegedly engaged that make her liable to William. William urges that the District Court erred in concluding that the complaint alleges only that Otto and Frances acted together in siphoning funds from the Partnership; in fact, he contends, the complaint alleged liability for acts engaged in by Frances alone, as well as actions perpetrated by her and Otto jointly. He notes that the Rules of Civil Procedure did not require that Frances be joined in the earlier cause of action, but he maintains that the court nonetheless abused its discretion when it refused to consolidate the two cases. William contests the District Court's determination that Otto and Frances are in privity and its consequent holding that *res judicata* bars certain of William's claims against Frances. Finally, William contends that his claims against Frances are not barred because he was never afforded a fair and full opportunity to present those claims in the

earlier case against Otto, due to the court's refusal to admit evidence of Frances's using Partnership funds to pay personal credit card debt.

¶14 Frances argues that collateral estoppel bars relitigation of the issue of whether Otto used Partnership funds to pay his personal credit card debt because this issue was raised and decided in the trials in the earlier case. She contends that William's concession that Otto's claims are barred is a tacit acknowledgment that William has raised the identical issues that were raised and decided in the earlier case. Frances insists that for purposes of preclusion, there has been a final judgment on the merits in both trial phases of the prior case and that William had a full and fair opportunity to present his claims during those trials, as confirmed by this Court in *Baltrusch*. Frances argues that *res judicata* precludes William from asserting claims of fraud and deceit, conversion and conspiracy against her because, as William has acknowledged, these claims were or could have been raised and decided in the previous suit, at least as to Otto. Frances suggests that she and Otto are in privity for purposes of *res judicata* because they are so connected as to be identified with one another in interest and equivalently affected by this litigation. Thus, Frances concludes, William has already litigated whether she and Otto misused Partnership property for their own benefit, including alleged payment of personal credit card debt.

¶15 *Res judicata* and collateral estoppel are doctrines that embody a judicial policy that favors a definite end to litigation, *Kullick*, ¶ 17, whereby we seek to prevent parties from incessantly waging piecemeal, collateral attacks against judgments, *Olympic Coast Investment, Inc. v. Wright*, 2005 MT 4, ¶ 26, 325 Mont. 307, ¶ 26, 105 P.3d 743, ¶ 26.

10

The doctrines deter plaintiffs from splitting a single cause of action into more than one lawsuit, *Smith v. Schweigert* (1990), 241 Mont. 54, 59, 785 P.2d 195, 198, thereby conserving judicial resources and encouraging reliance on adjudication by preventing inconsistent judgments. *Allen v. McCurry* (1980), 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 313. *Res judicata*, or claim preclusion, bars the relitigation of a claim that the party has already had an opportunity to litigate. *Kullick*, ¶ 17. Collateral estoppel, or issue preclusion, bars the reopening of an issue that has been litigated and determined in a prior suit. *Holtman v. 4-G's Plumbing and Heating* (1994), 264 Mont. 432, 439, 872 P.2d 318, 322. We have indicated that *res judicata* will apply once a final judgment has been entered. *Holtman*, 264 Mont. at 436, 872 P.2d at 320; *Olson v. Daughenbaugh*, 2001 MT 284, ¶ 22, 307 Mont. 371, ¶ 22, 38 P.3d 154, ¶ 22; *see also State Med. Oxygen v. American Med. Oxygen* (1992), 256 Mont. 38, 43, 844 P.2d 100, 103 (indicating that "a final judgment on the merits" is a prerequisite to application of *res judicata*); Restatement (Second) of Judgments § 13 (1982) ("[t]he rules of res judicata are applicable only when a final judgment is rendered" but a lesser degree of finality is needed to apply issue preclusion); 18A Charles Alan Wright et al., Federal Practice and Procedure: Jurisdiction 2d § 4434 at 128 (2002) (suggesting that although views of finality may be increasingly relaxed with respect to the doctrine of collateral estoppel, similar developments may be inappropriate with respect to the doctrine of *res judicata*).

11

¶16    *Res judicata* bars a party from relitigating a matter that she has already had an opportunity to litigate.  *Olympic Coast Investment*, ¶ 26 (citation omitted).  *Res judicata* applies when the following criteria are met:

> (1)    The parties or their privies are the same;
> (2)    The subject matter of the action is the same;
> (3)    The issues related to the subject matter are the same; and
> (4)    The capacities of the person are the same in reference to the subject matter and the issues between them.

*Olympic Coast Investment*, ¶ 26.  This Court has previously stated that *res judicata* "bars the relitigation of an entire cause of action once a final judgment has been entered." *Holtman*, 264 Mont. at 436, 872 P.2d at 320; *accord* Restatement (Second) of Judgments § 13; 18A Wright et al., § 4434 at 128.

¶17    The final judgment prerequisite for the application of the doctrine has remained latent in many of our previous applications of *res judicata*.  This case, however, brings it squarely to the forefront.  The parties vigorously contest whether the four elements of *res judicata* enumerated above have been satisfied.  Nevertheless, the District Court has not yet entered final judgment for the 2003 trial.  Consequently, and in spite of William's apparent acquiescence on this point, *res judicata* cannot, on the basis of that 2003 trial, bar any claims presented in this case.

¶18    Because the parties dispute whether collateral estoppel bars relitigation of issues raised and decided in the previous trials, we now turn to that question.  Collateral estoppel bars litigants from reopening all questions essential to the judgment which were determined by a prior judgment.  *Haines Pipeline Const. v. Montana Power* (1994), 265

Mont. 282, 288, 876 P.2d 632, 636. We have traditionally applied a three-part test to determine if collateral estoppel bars relitigation of an issue. *Haines*, 265 Mont. at 288, 876 P.2d at 636; *Marriage of Stout* (1985), 216 Mont. 342, 349-50, 701 P.2d 729, 733-34; *Kullick*, ¶ 18. As pronounced by Chief Justice Traynor in the watershed case *Bernhard v. Bank of America Nat. Trust & Savings* (Cal. 1942), 122 P.2d 892, 895, and subsequently adopted by this Court, application of collateral estoppel in Montana has traditionally required that:

> (1) the identical issue raised was previously decided in a prior adjudication;
> (2) a final judgment on the merits was issued in the prior adjudication; and
> (3) the party against whom collateral estoppel is now asserted was a party or in privity with a party to the prior adjudication.

*Kullick*, ¶ 18. In accordance with protecting litigants' due process rights, we also consider whether the party against whom preclusion is asserted was afforded the opportunity to obtain "'a full and fair adjudication [of the issue] in the initial action.'" *Estate of Eide v. Tabbert* (1995), 272 Mont. 180, 185, 900 P.2d 292, 296 (quoting Restatement (Second) of Judgments § 28(5)(c) (1982)); *accord State v. Perry* (1988), 232 Mont. 455, 464, 758 P.2d 268, 273, *overruled on other grounds by State v. Clark*, 2005 MT 330, ¶ 32, 330 Mont. 8, ¶ 32, ___ P.3d ___, ¶ 32 (requiring a "full opportunity to present a[n] issue for judicial decision"); *Allen*, 449 U.S. at 95, 101 S.Ct. at 415, 66 L.Ed.2d at 313 (citing *Montana v. U.S.* (1979), 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210). To obviate future confusion, henceforth, in addition to the above enumerated elements, application of collateral estoppel requires that: (4) the party

13

against whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred. Other courts similarly specify, as an element of collateral estoppel, the requirement of a full and fair opportunity to present an issue. *See, e.g.*, *Indus. Commission v. Moffat City School Dist. Re No. 1* (Colo. 1987), 732 P.2d 616, 619-20; *D'Arata v. New York Cent. Mut. Fire Ins.* (N.Y. 1990), 564 N.E.2d 634, 636; *Robi v. Five Platters, Inc.* (9th Cir. 1988), 838 F.2d 318, 322; *In re PCH Associates* (2nd Cir. 1991), 949 F.2d 585, 593. We place "[t]he burden . . . on the party attempting to defeat the application of collateral estoppel to establish the absence of a full and fair opportunity to litigate." *D'Arata*, 564 N.E.2d at 636.

¶19 William has conceded that he is in privity with the Partnership and that the District Court issued a final judgment on the merits in the 1999 trial of the earlier cause of action. Consequently, we need only consider whether the District Court issued a final judgment on the merits in the second phase of the previous action against Otto and whether the District Court previously decided the identical issues now raised by William. In addition, we must consider whether William has established the absence of a full and fair opportunity to litigate any issues that he may be collaterally estopped from relitigating.

¶20 In our effort to determine whether the District Court's judgment and order of November 2004 is sufficiently final for purposes of applying the doctrine of collateral estoppel, we find existing Montana caselaw unavailing. *See, e.g.*, *Linder v. Missoula County* (1992), 251 Mont. 292, 295, 824 P.2d 1004, 1005-06 (considering finality of a settlement agreement for purposes of preclusion); *Colstrip Faculty v. Rosebud County*

14

*Trustees* (1992), 251 Mont. 309, 311, 824 P.2d 1008, 1010 (considering the finality of denial of a requested injunction). Therefore, we turn to other authorities for guidance. "It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion." *Christo v. Padgett* (11th Cir. 2000), 223 F.3d 1324, 1339, cert. denied 531 U.S. 1191, 121 S.Ct. 1190, 149 L.Ed.2d 106 (2001) (citations omitted). According to a number of federal circuits, a judgment that has not been entered as a final judgment because of the pendency or future availability of an appeal may nevertheless have full collateral estoppel effect. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.* (Fed. Cir. 1999), 170 F.3d 1373, 1381 (addressing finality when an appeal is pending); *see also Burlington Northern R.R. v. Hyundai Merchant Marine Co.* (3rd Cir. 1995), 63 F.3d 1227, 1233 n. 8 (applying collateral estoppel to issues decided by partial summary judgment based on consideration of "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed") (citation and quotations omitted); *Metromedia Co. v. Fugazy* (2nd Cir. 1992), 983 F.2d 350, 366-67, *abrogated on other grounds as recognized by Yung v. Lee* (2nd Cir. 2005), 432 F.3d 142, 147-48 (applying collateral estoppel despite the fact that the ruling is not yet appealable); *Christo*, 223 F.3d at 1339 (applying collateral estoppel based on a "substantial order in which [the court] explained its findings" after considering the evidence despite a subsequent settlement hindering entry of final judgment); *Williams v. Commissioner of Internal Revenue* (7th Cir. 1993), 1 F.3d 502, 504 ("a judgment final in the trial court may have collateral estoppel effect even

15

though the loser has not exhausted his appellate remedies"); 18A Wright et al., § 4434 at 110 ("[r]ecent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief").

¶21 Moreover, the pendency of motions for a new trial or judgment as a matter of law does not necessarily deprive a judgment of the finality required for purposes of applying collateral estoppel. *See Upjohn*, 170 F.3d at 1381 ("the district court did not err in according the *Mova* judgment collateral estoppel effect despite the pendency of Upjohn's JMOL/new trial motion in *Mova*. [T]he authorities and modicum of caselaw that have [addressed this issue] are nearly uniform in concluding that the fact that post-trial motions are pending does not affect the finality of a judgment and thus does not prevent its preclusive effect"); *Tripati v. Henman* (9th Cir. 1988), 857 F.2d 1366, 1367 ("[a] pending Rule 59(e) motion [to alter or amend the judgment] similarly does not deprive a judgment of finality for res judicata purposes"); Restatement (Second) of Judgments § 13 cmt. f (1982) ("[a] judgment otherwise final for purposes of res judicata [or collateral estoppel] is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment nonfinal. . . . The judgment ceases to be final if it is in fact set aside by the trial court, as it would be upon the granting of a motion for a new trial"). To deny preclusion during the pendency of post-trial motions and appeals "would lead to an absurd result: Litigants would be

16

able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation." *Tripati*, 857 F.2d at 1367. Worse yet, it would give a litigant in William's position incentive to file dubious post-trial motions and appeals and drag them out as long as possible, with the hope of delaying the preclusive effects of an earlier ruling until he obtains a settlement or inconsistent judgment in the later case. The doctrine of collateral estoppel arose to address these very concerns. Consequently, we adopt this relaxed requirement of finality for purposes of applying collateral estoppel.

¶22    The Restatement suggests that before giving preclusive effect to a judgment or order, "the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered[, and should refuse preclusion] if the decision was avowedly tentative." Restatement (Second) of Judgments, § 13 cmt. g (1982). Factors to consider in deciding whether to give preclusive effect to issues resolved in a judgment or order that has not been entered as final are:

> (1) whether the prior decision was adequately deliberated and firm and not avowedly tentative;
> (2) whether the parties were fully heard;
> (3) whether the court supported its decision with a reasoned opinion; [and]
> (4) whether the court's prior decision was subject to appeal or was in fact reviewed on appeal.

17

*Greenleaf v. Garlock* (3rd Cir. 1999) 174 F.3d 352, 358 (citing Restatement (Second) of Judgments, § 13) (internal quotations omitted) (utilizing the identical three-part test for application of collateral estoppel as has been employed by Montana courts).

¶23 Despite the pendency of post-trial motions to amend or alter the District Court's findings of fact, conclusions of law, judgment and order, that judgment reaches the requisite finality for application of collateral estoppel. More than a year elapsed between the trial in July 2003 and the District Court's issuance of a lengthy judgment. In that judgment, the District Court sets forth thirty-two factual findings, draws sixteen conclusions of law and enumerates fifteen distinct orders. Far from being "avowedly tentative," the court's ruling evinces careful and adequate deliberation and represents the court's obvious attempt to finally and firmly resolve the issues before it with a reasoned opinion. The parties had the benefit of a full trial on the merits regarding the issues of Otto's breaches of contract and violations of his duties to the Partnership. The District Court explicitly declined to consider William's allegations that Otto acted in complicity or conspiracy with Frances. Nevertheless, resolution of William's allegation that Otto tortiously allowed Partnership property to be used for personal purposes and converted Partnership property necessarily encompassed acts perpetrated by Frances with Otto's knowledge. Therefore, William's factual allegations against Frances, such as they are, were fully heard. Finally, the District Court's decision will eventually be subject to appeal. Each of these factors weighs in favor of according finality to the District Court's judgment of November 2004. Additionally, we conclude that it is appropriate to accord

18

finality to an earlier judgment which contains findings of fact that definitively resolve all of the new allegations and legal theories included in the later complaint. Accordingly, we find the 2004 judgment to be sufficiently final for purposes of applying the doctrine of collateral estoppel.

¶24　One possible pitfall of this more relaxed approach is the possibility that this Court or the District Court will alter the 2004 judgment that provides the basis for preclusion. It is thus prudent to explicitly provide for such a contingency as did the *Upjohn* court. 170 F.3d at 1382. Should the District Court's judgment and order of November 2004, upon which preclusion now rests, be amended or reversed in pertinent part, William may move the District Court to modify its grant of summary judgment accordingly.

¶25　To determine whether the issues decided in the prior adjudication are identical to those presented in the present case, "we compare the pleadings, evidence and circumstances surrounding the two actions." *Holtman*, 264 Mont. at 439, 872 P.2d at 322. In substantively considering whether the issues are identical, we do not equate an issue with "elements of a cause of action"; rather, the bar "extends to all questions essential to the judgment and actively determined by a prior valid judgment. [Moreover, c]ollateral estoppel also prevents relitigation of *determinative facts* which were actually or necessarily decided in a prior action." *Haines*, 265 Mont. at 288, 876 P.2d at 636 (citations and internal quotations omitted) (emphasis added). A litigant cannot avoid preclusion simply by reframing the same issues or raising novel contentions. "A new contention is not, however, necessarily a new issue. If a new legal theory or factual

assertion put forward in the second action is 'related to the subject-matter and relevant to the issues' that were litigated and adjudicated previously, 'so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.'" *Haines*, 265 Mont. at 288-89, 876 P.2d at 636-37 (citations omitted) (emphasis in original) (quoting Vol. 1B, Moore's Federal Practice ¶ 0.443[2] at 760). The mere fact that two cases arise from the same transaction does not necessarily mean that each involve identical issues. *Estate of Watkins v. Hedman, Hileman & Lacosta*, 2004 MT 143, ¶ 33, 321 Mont. 419, ¶ 33, 91 P.3d 1264, ¶ 33 (quoting *Fadness v. Cody* (1997), 287 Mont. 89, 96-97, 951 P.2d 584, 588-89). Nevertheless, consistent with the purpose of promoting judicial economy, we have justified applying collateral estoppel when the "issues are so intertwined that to decide the issue before it, the [District] Court would have to rehear the precise issue previously decided . . . ." *Martelli v. Anaconda-Deer Lodge County* (1993), 258 Mont. 166, 169, 852 P.2d 579, 581.

¶26 Here, we have before us just the limited pleadings and evidence from the earlier cause of action that the parties have provided, as well as the judgments issued by the District Court. Nevertheless, these documents illustrate that William has raised issues in this case that are identical to issues that were or could have been raised in his earlier suit against Otto and that would require relitigation of facts that have already been necessarily decided. In the pretrial orders for both trials, William alleged that Otto caused or allowed

20

debt owed by him and Frances, along with some of their personal obligations,[2] to be paid with Partnership funds. The District Court's judgment and order indicates that the 1999 trial "blossomed into an action for mutual accounting for all businesses and a division of all the business and co-owned properties." Subsequent to the 1999 trial, the court ruled on the existence and extent of the alleged improper personal expenses and ordered Otto to reimburse the Partnership for many such expenses. This ruling expressly contemplated personal expenses, in the form of credit card charges, which Otto allegedly allowed Frances to pay with Partnership funds. The court found that William failed to prove the existence and extent of these expenses. Accordingly, the court did not order Otto to repay the Partnership for Frances's alleged payment of personal credit card expenses with Partnership funds.

¶27 William's amended complaint in the present case alleges that Frances impermissibly utilized Partnership funds to pay expenses that *both* she and Otto *knew* were not properly chargeable to the Partnership. Otto's knowledge that these alleged expenses were not properly chargeable to the Partnership necessarily implies his awareness that Frances was using Partnership funds to pay such expenses. If Otto knew that Frances was utilizing Partnership funds to pay personal expenses and he acquiesced in this conduct, then he permitted her to divert Partnership funds by providing her with the opportunity to do so or neglecting to restrain, prevent, or report her conduct, as his

---

[2]The specifically enumerated expenses—utilities, real estate taxes on a residence shared by Otto and Frances, groceries, telephone, Otto's and Frances's life insurance and personal vehicles, and the cost of installing a gas line to their shared residence—can only be characterized as the personal expenses of both Otto and Frances.

21

fiduciary duties and duty of loyalty to the Partnership required him to do.[3] *See* § 35-10-403, MCA (declaring a partner's duty to furnish complete and accurate information to another partner); § 35-10-405(5), MCA (declaring that a partner must discharge his duties consistent with the obligation of good faith and fair dealing). William fails to recognize, however, that he complained of this precise conduct by Otto in the pretrial orders when he alleged that Otto allowed[4] Partnership funds to be used to pay personal expenses. Indeed, William has previously argued that the facts surrounding his claims against Frances and those asserted against Otto "involve exactly the same facts, and the only [remaining] question on that would be what participation did Frances have[.]" In comparing the claims asserted in the present case to those made previously, William's attorney stated that he would present "the same evidence that's going to come in in the initial case with respect to Otto and his utilization of the corporate assets, the charging of personal expenses to the partnership assets, the charging of personal assets on partnership credit cards, and paying those with farm partnership funds; the only difference between that claim as it was, is now we know Frances was involved in that also, or at least we are alleging that." William's own arguments completely undermine his present appeal.

---

[3]William acknowledges as much in his brief: "Albeit [purchases made with Otto's and Frances's personal credit cards and later paid off with Partnership funds] was something that Otto should have disclosed as part of his accounting to William for Otto's management of the operations of the Partnership, Otto had not done so in breach of his fiduciary duties."

[4]The common meaning of allow is "to permit by neglecting to restrain or prevent" or to "provide opportunity or basis." Webster's Third New International Dictionary (1961).

¶28 Irrespective of these arguments put forth by William, the question of whether and to what extent Frances, with Otto's knowledge, diverted Partnership funds for personal purposes is "so intertwined" with the issues already determined by the District Court that it "would have to rehear the precise issue previously decided," *Martelli*, 258 Mont. at 169, 852 P.2d at 581—namely, whether and to what extent Otto allowed Partnership funds to be used for personal expenses. Because the court already equalized the compensation between Otto and William, it would have to reconstruct its prior judgments in excruciating detail to determine the extent to which William has already received compensation for the wrongs allegedly perpetrated by Frances. Otherwise, William might recover doubly to the detriment of both Otto and Frances. The court, cognizant of William's assertions and with the benefit of voluminous testimony and evidence, deliberately equalized the compensation that each brother received from the Partnership. The factual allegations and legal theories that William presents in the present case are intimately related to the subject matter of the earlier case and highly relevant to Otto's purported breach of his duties to the Partnership. These allegations could have been raised in the earlier case. The determinative fact of whether and to what extent Frances, with Otto's knowledge, misappropriated Partnership funds was actually and necessarily decided in the prior case. Absent this properly precluded factual allegation, there is not a single allegation in William's amended complaint that would provide a basis for holding Frances liable to William. Consequently, we conclude that the precise issue, or factual allegation, that provides the basis for each of William's theories of recovery in the

23

present case has already been presented to and decided by the court in his earlier suit against Otto.

¶29 Finally, William has not established that he was deprived of a full and fair opportunity to litigate Frances's purported involvement, with Otto's knowledge, in the diversion of Partnership funds to personal uses. The only legal authority with which William supports his argument is 46 Am.Jur.2d *Judgments* § 521 (1994), which merely recites the bald proposition that collateral estoppel should not apply against a party who was not previously afforded a full and fair opportunity to litigate the issue. William does not cite any authority that elaborates on this requirement. Moreover, William supports the factual assertions that form the basis of his argument by referring to the 1999 trial transcripts. These transcripts, however, are not part of the record before the Court in this case. "It is the duty of a party seeking review of a judgment . . . to present the supreme court with a record sufficient to enable it to rule upon the issues raised." Rule 9(a), M.R.App.P.; *see also* Rule 23(a)(4), M.R.App.P. ("[t]he argument shall contain . . . citations to the authorities . . . relied on"). William's failures to support his argument with legal authority and to provide this Court with the transcripts necessary to assess the veracity of his factual assertions defeat his argument that he was denied a full and fair opportunity to litigate the issue of Frances's participation in the purported misappropriation of Partnership funds.

¶30 We feel compelled to comment briefly on the District Court's improper order of operations in its handling of this case. Judge Simonton, who presided over this case as

24

well as the 2003 trial, granted Otto and Frances's motion for summary judgment on the basis of preclusion in June 2004. Not until November 2004, however, did Judge Simonton issue his judgment in the 2003 trial. We strongly disapprove of the practice of basing preclusion on a judgment that has yet to be filed. Nevertheless, because we now have the judgment of November 2004 before us and can conclude that summary judgment was properly granted on the basis of that judgment, we affirm Judge Simonton's dismissal of William's case. "Dismissal or stay of the second action are most attractive when there is a reasonable prospect that determination of the appeal in the first action will establish res judicata effects that preclude the entire second action. Dismissal or stay are least attractive when the second action presents claims or issues that must be tried regardless of the outcome of the first action and there are cogent reasons to fear the effects of delay." 18A Wright et al. § 4433 at 94. Here, there is every reason to believe that ultimate resolution of the first cause of action will, by application of collateral estoppel, preclude William's entire second cause of action. Thus, dismissal is appropriate.

¶31 We affirm.


/S/ W. WILLIAM LEAPHART

25

We concur:

/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice John Warner did not participate in this decision.

Justice Patricia O. Cotter concurs.

¶32   I concur in the result we reach.  I write separately to express some concern over the state of our *res judicata* and collateral estoppel jurisprudence in light of the conclusions we reach in this Opinion.

¶33   At ¶ 16 we set forth the elements of *res judicata*, as taken from our case law. Notably, the listed criteria do not include the requirement of a final judgment.  However, our cases, as set out in ¶ 15, seem to require a final judgment on the merits as a prerequisite to the application of the doctrine.  We conclude here that this prerequisite is absolute, and thus decline to apply *res judicata* because the District Court has not yet entered final judgment for the 2003 trial.  Opinion, ¶ 17.

¶34   We then turn to the doctrine of collateral estoppel, listing its requisite elements at ¶ 18.   And, notably, the enumerated prerequisites for application of this doctrine *specifically include* the requirement that "a final judgment on the merits [be] issued in the prior adjudication."  *Kullick, ¶ 18.*  We proceed, however, to conclude that there should be a "relaxed requirement of finality for purposes of applying collateral estoppel." Opinion, ¶ 21.  We are thus left with the imposition of a strict requirement of judgment

26

finality in a *res judicata* analysis, though it is not an enumerated element, while relaxing the requirement of finality of judgment in the application of collateral estoppel, when the doctrine as defined in our case law specifically requires the entry of a final judgment. It seems to me we have muddied rather than cleared the waters.

¶35 While I have not conducted an in-depth study, I know from experience and recall that many cases and treatises have historically applied these two doctrines virtually interchangeably, simply because their elements are so similar. A citation in our Opinion bears this out. "(Restatement (Second) of Judgments § 13 cmt. f (1982) ("[a] judgment otherwise final for purposes of res judicata [or collateral estoppel] is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment non-final . . .)." Opinion, ¶ 21. It seems to me that the distinction we create today--requiring absolute finality of judgment for *res judicata* application, but relaxed finality of judgment for purposes of collateral estoppel-- is not only inconsistent with the enumerated elements of the two doctrines, it is also unnecessarily confusing to the practitioner. As the Restatement of Judgments, cited above, seems to suggest, I would impose an identical final judgment standard in both *res judicata* and collateral estoppel analyses, and call it a day.

¶36 Otherwise, I concur.


/S/ PATRICIA COTTER

27