DA 12-0273

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 107

SHARON STEWART,

      Petitioner, Appellee, and
      Cross-Appellant,

  v.

LIBERTY NORTHWEST INSURANCE CORPORATION,

      Respondent/Insurer and Appellant.


APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2008-2066
                   Honorable James Jeremiah Shea, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

           Kelly M. Wills, Kathleen L. DeSoto, Garlington, Lohn & Robinson, PLLP,
           Missoula, Montana

      For Appellee and Cross-Appellant:

           Michael J. San Souci, Attorney at Law, Bozeman, Montana


                              Submitted on Briefs:  February 20, 2013

                                         Decided:  April 23, 2013


Filed:

                    _____
                            Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Liberty Northwest Insurance Corporation (Liberty) appeals an order of the Workers' Compensation Court (WCC) determining that Sharon Stewart is entitled to continued payment for her pain medication. Stewart cross-appeals the WCC's determination that she is not entitled to attorneys' fees or the statutory penalty.

¶2     We have consolidated the appeal and cross-appeal issues into the following three issues:

¶3     1.    Whether the WCC erred when it determined that Stewart was entitled to continued payment for the pain patches prescribed by her treating physician.

¶4     2.    Whether the WCC erred when it determined that Stewart was not entitled to reimbursement for her attorneys' fees.

¶5     3.    Whether the WCC erred when it failed to impose the statutory penalty on Liberty, pursuant to § 39-71-2907, MCA.[1]

## Factual and Procedural Background

¶6     On August 26, 2002, Stewart suffered an injury in the course and scope of her employment with Gallatin Laundry Company, Inc. (Gallatin). Liberty, which insured Gallatin, accepted liability for Stewart's injury and paid wage loss and medical benefits with an 18% whole person impairment rating.

---

[1]  The statutes in effect on the date of Stewart's work-related injury govern Stewart's claim. *Ford v. Sentry Cas. Co.*, 2012 MT 156, ¶ 32, 365 Mont. 405, 282 P.3d 687 (citing *Fleming v. International Paper Co.*, 2008 MT 327, ¶ 26, 346 Mont. 141, 194 P.3d 77). Consequently, unless otherwise indicated, the statutes referenced in this decision refer to the 2001 version of the Montana Code Annotated.

¶7    Stewart's initial treating physician, Dr. John Campbell, diagnosed her injury as a "probable medial meniscal tear" of the right knee. Stewart underwent two arthroscopic surgeries over the next few months, but she continued to have issues with pain and range of motion in her knee.

¶8    In 2003, Dr. Lowell Anderson examined Stewart. He noted that she continued to have right knee pain with an "unknown etiology." Dr. Anderson listed several possible causes for her pain including a "possible saphenous nerve neuroma." Dr. Anderson assigned Stewart a 35% impairment rating based on his opinion that Stewart's physical findings "most closely resemble the diagnostic findings in reflex sympathetic dystrophy." Based on Dr. Anderson's diagnosis, Stewart filed a petition with the WCC for an increased impairment rating.

¶9    An evidentiary hearing on Stewart's petition was held on August 9, 2006. Despite his earlier statements, Dr. Anderson testified in his deposition in preparation for the hearing, that he did not know how Stewart's saphenous nerve could have been injured during her surgeries, and that, while there was a good chance that Stewart suffered from a pain complex, he could not point to any medical evidence supporting the conclusion that there was a relationship between Stewart's surgeries and her pain symptoms.

¶10    The WCC, in a decision entered September 14, 2007, determined that Stewart failed to carry her burden of proving causation, thus the court denied her request for an increased impairment rating. Stewart did not appeal the WCC's decision.

¶11    On March 12, 2008, Stewart was informed by her pharmacist that Liberty would no longer approve or cover the expense of the pain patches that she had been using for

3

the past several years. This determination was initiated without any advance notice or warning to Stewart or her counsel.

¶12 On March 26, 2008, Stewart filed her Petition for Emergency or Expedited Declaratory Relief to Reinstate Medical Benefits. In her petition, Stewart sought reinstatement of medical benefits for the Lidoderm pain patches for her knee as well as for attorneys' fees and penalties for Liberty's failure to provide benefits to cover the patches.[2] In support of her request for reinstatement of these benefits, Stewart had her medical records reviewed by Dr. Clifford Wheeless, an orthopedic surgeon licensed in North Carolina. Dr. Wheeless opined that more probably than not, either Stewart's original knee injury or her resulting surgery were "absolutely" the cause of the chronic pain condition from which Stewart now suffers.

¶13 After the WCC denied Liberty's Motion for Judgment on the Pleadings or Alternatively Rule 12(b)(6) Motion to Dismiss as well as Liberty's Motion for Summary Judgment, the parties submitted the case to the WCC on a stipulated record. The WCC issued its Findings of Fact, Conclusions of Law and Judgment on April 11, 2012, wherein the court determined that Stewart had met her burden of showing that her knee pain and her need for medication for that pain, was causally related to her industrial injury and subsequent knee surgery, and that she was entitled to payment for her pain medication. The WCC also determined that Stewart was not entitled to her attorneys' fees or to the statutory 20% penalty pursuant to § 39-71-2907, MCA.

---

[2] After Stewart filed her petition, Liberty reinstated coverage for Stewart's pain medication under a reservation of rights.

¶14 In addition, the WCC noted in its judgment that in Stewart's original proceeding, although Dr. Anderson believed there was a causal connection between the knee surgery and the pain, he could not provide a definite opinion as to how that connection existed. In contrast, Dr. Wheeless testified in the current proceeding that in his medical opinion either Stewart's original knee injury or her resulting surgery were "absolutely" the cause of the chronic pain condition from which she now suffers.

¶15 Liberty appeals the WCC's determination that Stewart is entitled to continued payment of benefits for the pain patches. Stewart cross-appeals the WCC's decision denying Stewart's request for attorneys' fees and for payment of the statutory penalty.

**Standard of Review**

¶16 We review the WCC's conclusions of law to determine whether they are correct. *Keller v. Liberty Northwest, Inc.*, 2010 MT 279, ¶ 20, 358 Mont. 448, 246 P.3d 434 (citing *Schmill v. Liberty Northwest Ins. Corp.*, 2009 MT 430, ¶ 8, 354 Mont. 88, 223 P.3d 842; *Lanes v. Mont. State Fund*, 2008 MT 306, ¶ 16, 346 Mont. 10, 192 P.3d 1145). In addition, we review the WCC's findings of fact to determine whether they are supported by substantial credible evidence. *Keller*, ¶ 20 (citing *Schmill*, ¶ 8; *Lanes*, ¶ 16; *Van Vleet v. Mont. Ass'n of Counties Workers' Comp. Trust*, 2004 MT 367, ¶ 9, 324 Mont. 517, 103 P.3d 544).

**Issue 1.**

¶17 *Whether the WCC erred when it determined that Stewart was entitled to continued payment for the pain patches prescribed by her treating physician.*

5

¶18　Liberty maintains that Stewart's petition in this case focused on whether her knee pain was causally connected to her industrial injury. Liberty contends that the issue of causation of Stewart's knee pain was already litigated and decided in a prior proceeding, thus Stewart is collaterally estopped from challenging the WCC's prior conclusion on causation. Conversely, Stewart argues that Liberty's collateral estoppel defense fails because, contrary to Liberty's contentions, the identical issue was not litigated in the prior proceeding.

¶19　The doctrine of collateral estoppel, "which embodies the concept of 'issue preclusion,' " bars a party from re-litigating an issue where that issue has been litigated and determined in a prior suit. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 65, 345 Mont. 12, 192 P.3d 186 (citing *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267; *State v. Ditton*, 2006 MT 235, ¶ 40, 333 Mont. 483, 144 P.3d 783). Collateral estoppel "favors a definite end to litigation" and prevents parties "from incessantly waging piecemeal, collateral attacks against judgments." *Baltrusch*, ¶ 15 (citing *Kullick v. Skyline Homeowners Ass'n, Inc.*, 2003 MT 137, ¶ 17, 316 Mont. 146, 69 P.3d 225; *Olympic Coast Inv., Inc. v. Wright*, 2005 MT 4, ¶ 26, 325 Mont. 307, 105 P.3d 743). Moreover, collateral estoppel "deter[s] plaintiffs from splitting a single cause of action into more than one lawsuit, thereby conserving judicial resources and encouraging reliance on adjudication by preventing inconsistent judgments." *Baltrusch*, ¶ 15 (citing *Smith v. Schweigert*, 241 Mont. 54, 59, 785 P.2d 195, 198 (1990); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 415 (1980)).

6

¶20 We apply the following four-part test to determine whether collateral estoppel bars relitigation of an issue: (1) the identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom collateral estoppel is now asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred. *Baltrusch*, ¶ 18.

¶21 We have held that the most crucial element of collateral estoppel is the identity of issues. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 28, 321 Mont. 432, 92 P.3d 620 (citing *Fadness v. Cody*, 287 Mont. 89, 96-97, 951 P.2d 584, 588-89 (1997)). In order to satisfy this element, the identical issue or "precise question" must have been litigated in the prior action. *Watkins Trust*, ¶ 28 (citing *Fadness*, 287 Mont. at 96-97, 951 P.2d at 588-89). The mere fact that each action arises from the same transaction does not necessarily mean that they each involve the same issues. *Watkins Trust*, ¶ 28 (citing *Fadness*, 287 Mont. at 96-97, 951 P.2d at 588-89).

¶22 To determine whether the issues decided in the prior adjudication are identical to those presented in the present case, "we compare the pleadings, evidence and circumstances surrounding the two actions." *Baltrusch*, ¶ 25 (quoting *Holtman v. 4-G's Plumbing & Heating, Inc.*, 264 Mont. 432, 439, 872 P.2d 318, 322 (1994)).

¶23 In *Lund v. State Compensation Mut. Ins. Fund*, 263 Mont. 346, 868 P.2d 611 (1994), we held that because the question of petitioner's entitlement to indemnity benefits in the current proceeding was based on different statutory criteria than his entitlement to

7

permanent partial disability benefits decided in a prior proceeding, the doctrine of collateral estoppel did not apply. In *Lund*, both actions arose from Lund's July 8, 1986 workplace injury. The parties engaged in litigation in 1990 ending with a determination by the WCC that the petitioner was entitled to receive 500 weeks of permanent partial disability benefits pursuant to § 39-71-703, MCA (1985), at a weekly rate of $13.34. In September 1992, the petitioner withdrew his election to proceed under § 39-71-703, MCA (1985), and filed a petition to seek indemnity benefits under §§ 39-71-705 through -708, MCA (1985), at a rate of $149.50 per week. *Lund*, 263 Mont. at 347-49, 868 P.2d at 612-13. We determined in *Lund* that because the benefits sought in each action were based on two different statutes, the issues in each action were not identical, thus collateral estoppel did not apply. *Lund*, 263 Mont. at 351, 868 P.2d at 614.

¶24 In the case *sub judice*, the fact that the 2007 action and the current action both involved questions regarding causation does not mean the issues were identical. The issue in the prior proceeding specifically dealt with Stewart's potential entitlement to an increased impairment rating given the overall deterioration in her condition, including increased pain symptoms. Unlike the prior proceeding, the issue in the current proceeding involves whether Stewart is still suffering from acute pain as a result of her initial work-related injury and whether Liberty continues to be liable for Stewart's pain medication.

¶25 In addition, contrary to Liberty's contention that the statutory criteria for Stewart's original claim and Stewart's current claim are the same, we conclude that each of Stewart's claims was brought under a different statutory basis. Stewart's original claim

was based on § 39-71-711, MCA, regarding impairment ratings, while Stewart's current claim is based on § 39-71-704, MCA, regarding the payment of medical benefits, specifically the pain patches.

¶26 Based on the foregoing, we conclude that the question of Stewart's entitlement to payment for her pain patches is a different question than her entitlement to an increased impairment rating, thus the doctrine of collateral estoppel does not apply. Accordingly, we hold that the WCC did not err when it determined that Stewart was entitled to continued payment for the pain patches prescribed by her treating physician.

**Issue 2.**

¶27 *Whether the WCC erred when it determined that Stewart was not entitled to reimbursement for her attorneys' fees.*

¶28 In its April 11, 2012 Findings of Fact, Conclusions of Law and Judgment, the WCC determined that "Liberty had a legitimate defense to liability for Stewart's pain medication, based upon the earlier holding of this Court, but continued to pay the disputed medical benefits under a reservation of rights pending a resolution of the dispute." Because the WCC determined that Liberty's actions in this case were reasonable, the court determined that Stewart was not entitled to reimbursement for her attorneys' fees.

¶29 Stewart argues by way of cross-appeal that the WCC erred, and that she is entitled to an award of her attorneys' fees because Liberty's "sudden, unexpected and unilateral" cancellation of Stewart's ongoing pain prescription was "inherently unreasonable" within the meaning of § 39-71-611, MCA. Liberty contends on the other hand that Stewart is

9

not entitled to an award of attorneys' fees because Liberty reasonably relied on the WCC's prior determination that Stewart's chronic knee pain was not causally connected to her industrial injury.

¶30     Section 39-71-611, MCA, provides in pertinent part:

> **Costs and attorneys' fees payable on denial of claim or termination of benefits later found compensable.**  (1) The insurer shall pay reasonable costs and attorney fees as established by the workers' compensation court if:
> (a)   the insurer denies liability for a claim for compensation or terminates compensation benefits;
> (b)   the claim is later adjudged compensable by the workers' compensation court; and
> (c)  in the case of attorneys' fees, the workers' compensation court determines that the insurer's actions in denying liability or terminating benefits were *unreasonable*.
> (2)   A finding of unreasonableness against an insurer made under this section does not constitute a finding that the insurer acted in bad faith or violated the unfair trade practices provisions of Title 33, chapter 18. [Emphasis added.]

Thus, a request for attorneys' fees requires the WCC to find that the insurer acted unreasonably.

¶31     "Reasonableness is a question of fact." *Marcott v. Louisiana Pacific Corp.*, 275 Mont. 197, 202, 911 P.2d 1129, 1133 (1996) (citing *Stordalen v. Ricci's Food Farm*, 261 Mont. 256, 258, 862 P.2d 393, 394 (1993)).  As we indicated earlier in this Opinion, we review the WCC's findings of fact to determine whether they are supported by substantial credible evidence. *Keller v. Liberty Northwest, Inc.*, 2010 MT 279, ¶ 20, 358 Mont. 448, 246 P.3d 434.  Substantial credible evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Keller*, ¶ 20.  "Indicating the high level of deference this Court accords to the WCC's factual findings, we have stated that evidence

10

will be considered substantial even if it is contradicted by other evidence, even if it is somewhat less than a preponderance, and even if it is inherently weak." *Gamble v. Sears*, 2007 MT 131, ¶ 20, 337 Mont. 354, 160 P.3d 537 (citing *EBI/Orion Group v. State Compensation Mut. Ins. Fund*, 249 Mont. 449, 453, 816 P.2d 1070, 1073 (1991); *Simms v. State Compensation Ins. Fund*, 2005 MT 175, ¶ 11, 327 Mont. 511, 116 P.3d 773; *Wolfe v. Webb*, 251 Mont. 217, 230, 824 P.2d 240, 248 (1992)).

¶32 Stewart argues that this case is analogous to this Court's decision in *Narum v. Liberty Northwest Ins. Corp.*, 2009 MT 127, 350 Mont. 252, 206 P.3d 964, wherein we upheld both the statutory penalty and the attorneys' fees awards granted by the WCC. We disagree, however, and conclude that *Narum* is distinguishable from the instant case.

¶33 Narum worked in the beer and wine industry for 37 years. The last 17 of those years he spent driving a small semi-truck delivering beer. His job duties included heavy lifting and loading. In March 2003, Narum stepped out of his truck and either slipped and fell to the pavement or missed the last step and fell to the pavement, landing on his left side. At the time, Narum experienced only a slight pain in his left hip. When the pain did not subside within a few weeks, Narum filed a worker's compensation claim. *Narum*, ¶ 2. Narum underwent numerous medical examinations and treatments with several doctors. Those medical examinations indicated that Narum would eventually need a hip replacement. *Narum*, ¶ 10.

¶34 Liberty was also the insurer in *Narum*. Liberty accepted liability for Narum's claim and paid benefits through December 2003. At that time, Liberty informed Narum that it would no longer pay benefits, so Narum hired an attorney to negotiate a settlement

11

with Liberty. The parties reached a settlement agreement in February 2004 wherein Liberty agreed to pay Narum $25,000, and to allow Narum to reserve his medical benefits. *Narum*, ¶¶ 10-11.

¶35 In January 2006, Liberty sent a letter to one of Narum's doctors asking questions about the cause of Narum's hip condition. Based on the doctor's response to the letter, Liberty refused to make further payments of medical benefits related to the treatment for Narum's left hip. *Narum*, ¶ 13. Narum was receiving cortisone shots for his hip pain. Narum later testified that Liberty did not inform him that it would no longer pay for the cortisone shots. Instead, Narum received word of Liberty's refusal to pay from his medical provider. In addition, Narum underwent hip replacement surgery in September 2007, but Liberty refused to pay for the surgery and related treatment. *Narum*, ¶ 14.

¶36 Narum filed a claim before the WCC. After reviewing all of Narum's medical records, the WCC found that Liberty was liable for medical and hospital benefits related to treatment of Narum's hip. And, because the WCC determined that Liberty acted unreasonably in denying payment for Narum's medical benefits, the court awarded Narum a 20% penalty and his attorneys' fees and costs. *Narum*, ¶ 15. The WCC based part of its determination that Liberty's actions were unreasonable on the fact that Liberty denied payment for Narum's hip replacement surgery even though hip replacement surgery was specifically identified as a possibility in the settlement agreement between the parties. The WCC also determined that Liberty had provided no persuasive explanation as to how it justified stopping payment for Narum's ongoing treatment.

*Narum*, ¶ 34. This Court agreed with the WCC and affirmed the WCC's decision to award attorneys' fees and the statutory penalty. *Narum*, ¶¶ 35, 38-39.

¶37 The instant case is distinguishable from *Narum* because here Liberty did not breach a settlement agreement and, although it did stop payment for the pain patches without notice to Stewart, it did so in reliance on the previous factual and legal findings of the WCC. Liberty's case manager, Sandy Scholl, testified that she only terminated payment for the pain patches after she reviewed the WCC's 2007 Findings of Fact, Conclusions of Law and Judgment wherein the WCC denied Stewart's request for an increased impairment rating because it did not see any causal relationship between the pain issues and Stewart's injury. In addition, after a short break in the payments, Liberty resumed paying for the pain patches under a reservation of rights.

¶38 We conclude here that reliance on a prior order from the WCC creates a reasonable basis for denying liability, thus Liberty's actions were not unreasonable. Accordingly, we hold that the WCC did not err when it determined that Stewart was not entitled to reimbursement for her attorneys' fees.

**Issue 3.**

¶39 *Whether the WCC erred when it failed to impose the statutory penalty on Liberty, pursuant to § 39-71-2907, MCA.*

¶40 The WCC determined that Liberty had "a legitimate defense to liability" for Stewart's pain medication based upon the earlier holding of the WCC, thus Liberty's actions were reasonable and "the application of a penalty under these facts is inappropriate."

13

¶41 Stewart argues in her cross-appeal that this was error on the WCC's part because Liberty's failure to provide a reasonable explanation for how it could justify the sudden and unilateral cessation of payment for her pain prescriptions warrants the imposition of the 20% penalty provided for in § 39-71-2907, MCA. Conversely, Liberty argues that Stewart is not entitled to an award of the statutory penalty because Liberty reasonably relied on the WCC's prior determination that Stewart's chronic knee pain was not causally connected to her industrial injury.

¶42 Under § 39-71-2907, MCA, the WCC may increase by 20% the full amount of benefits due to a claimant during the period of delay or refusal to pay if the insurer's delay or failure to pay is deemed to be unreasonable. However, the penalty set forth in § 39-71-2907, MCA, was not intended to eliminate an insurer's assertion of a legitimate defense to liability. *Marcott*, 275 Mont. at 202, 911 P.2d at 1132 (citing *Paulson v. Bozeman Deaconess Foundation Hosp.*, 207 Mont. 440, 444, 673 P.2d 1281, 1283 (1984)).

¶43 As we stated in the previous issue, reliance on a prior order from the WCC creates a reasonable basis for denying liability, thus Liberty's actions were not unreasonable. Accordingly, we hold that the WCC did not err when it failed to impose the statutory penalty on Liberty pursuant to § 39-71-2907, MCA.

¶44 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BRIAN MORRIS